Kevin Gerard O'Grady
Law Office of Kevin O'Grady, LLC
1164 Bishop Street, Suite 1605
Honolulu, Hawaii 96813
(808) 521-3367
Hawaii Bar No. 8817
Kevin@KevinOGradyLaw.Com

Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA  92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JUSTIN ARNOLD, BRYAN GARLAND, JAMES GRELL, ANDREW WHITE, <br><br> Plaintiffs, <br><br> v. <br><br> HAWAII COUNTY, <br><br> Defendant | Civil Action No. _____ <br> VERIFIED COMPLAINT, EXHIBITS 1-9 |

## <u>VERIFIED COMPLAINT</u>
## <u>FOR DECLARATORY AND INJUNCTIVE RELIEF</u>

COMES    NOW  the  Plaintiffs, Justin  Arnold,  Bryan  Garland,  James Grell and Andrew White (hereinafter "Plaintiffs"), by and through their undersigned counsel, and complains of the Defendant as follows:

## I.    <u>Introduction</u>

1.    The question presented by this case is whether the County of Hawaii, hereinafter "County", can take in excess of forty days to process a firearm permit to acquire when state law requires "…that a permit shall be issued or the application denied before the fortieth day from the date of application." *See* H.R.S. § 134-2(e);

2.    Accordingly, Plaintiffs brings this challenge to County's policy, rule, habit and custom of delaying issuing permits to acquire to persons who have applied for Permits to Acquire "PTA" for forty days or more;

3.     In  the  alternative,  Plaintiffs  brings  this  challenge  to  County's application of laws, specifically, but not limited to, H.R.S. § 134-2(e) as applied to Plaintiffs;

## II.    <u>PARTIES</u>

4.    Plaintiff Justin Arnold, (hereinafter "Arnold"), is an adult male resident of the State of Hawaii, resides in the County of Hawaii, and is a citizen of the United States;

5.    Plaintiff Bryan Garland, (hereinafter "Garland"), is an adult male resident of the State of Hawaii, resides in the County of Hawaii, and is a citizen of the United States;

6.    Plaintiff James Grell, (hereinafter "Grell"), is an adult male resident of the State of Hawaii, resides in the County of Hawaii, and is a citizen of the United States;

7.    Plaintiff Andrew White, (hereinafter "White"), is an adult male resident of the State of Hawaii, resides in the County of Hawaii, and is a citizen of the United States;

8.    Defendant County of Hawaii, (hereinafter "County"), is a municipal corporation incorporated under the laws of the State of Hawaii. County is authorized by law to control and maintain the Hawaii Police Department, an agency of the County, who acts on County's behalf in the area of law enforcement.  County is therefore ultimately responsible for Hawaii Police Department, (hereinafter "HPD"), and their actions, and therefore, must assume the risks incidental to the maintenance of HPD, their employees, laws, customs and policies. County can be served by serving the Department of the Corporation Counsel, Hawaii County at 101 Aupuni St # 325, Hilo, Hawaii 96720;

### III.    <u>JURISDICTION AND VENUE</u>

9.    This Court has subject matter jurisdiction over this action pursuant to

28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983 and § 1988;

10.     Venue lies in this Court pursuant to 28 U.S.C. § 1391;

## IV.    STATEMENT OF FACTS

11.     The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed.";

12.     The Second Amendment guarantees individuals a fundamental right to keep and carry arms for self-defense and defense of others in the event of a violent confrontation. *District of Columbia v. Heller*, 554 U.S. 570 (2008); *McDonald v. Chicago*, 561 U.S. 742 (2010); *Caetano v. Massachusetts*, 577 U.S. 1027 (2016);

13.     The Second Amendment is applicable to the States as incorporated through the Due Process Clause of Fourteenth Amendment because the right to "keep and bear Arms" is a fundamental constitutional right essential to ordered liberty. *McDonald v. City of Chicago*, 561 U.S. 742 (2010). "[T]he Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *District of Columbia v. Heller*, 554 U.S. 570, 582 (2008). The Fourteenth Amendment to the United States Constitution provides in pertinent part: No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any

state deprive any person of life, liberty, or property, without due process of

law; nor deny to any person within its jurisdiction the equal protection of the

laws;

14.     Hawaii law, specifically Hawaii Revised Statutes Section 134 *et

seq*, is a comprehensive set of laws covering all aspects of firearms in Hawaii

including everything from acquisition, possession, ownership, usage and

carriage of arms[1];

15.     Plaintiffs do not agree that any State law or County rule or policy

regarding the exercise of Second Amendment rights is constitutional;

16.     Plaintiffs do not concede that any permit or permission[2] is necessary

to exercise any aspect of Second Amendment rights;

17.     The State of Hawaii has not gotten the United States Supreme Court's

message from *Bruen.* Prior to *Bruen*, Hawaii had treated, for more than a

century, the Second Amendment as dead, buried and forgotten having

almost never issued any concealed carry permits.[3] Once *Bruen* was decided

---

[1] *See* Exhibit 1.

[2] Or registration of or for the exercise of any Second Amendment right.

[3] *See e.g. Young v. Hawaii*, 896 F.3d 1044, 1071 n.21 (9th Cir. 2018)
("Hawaii counties appear to have issued only *four* concealed carry licenses in
the past *eighteen years. See* 2000 Haw. Att'y Gen. Reps., *Firearm Registrations
in Hawaii, 2000 et seq*;"), judgment vacated, 142 S.Ct. 2895 (2022).

and county police chiefs began to issue a trickle of concealed carry permits, under

new county specific onerous carry concealed permit regulations, the

state legislature acted to ensure that even if people managed to overcome the

burdensome requirements to actually obtain a concealed carry permit, the

permits would be rendered utterly useless.[4] Hawaii merely switched gears

from almost never issuing any concealed carry permits so that there was no

one with a permit, to making permits now begrudgingly issued to be so

limited as to make it so that permit holders could not carry anywhere.[5]

Notwithstanding the United States Constitution and the Second Amendment

and the *Bruen* decision, Hawaii, and the political subdivisions of Counties, just

simply do not want anyone to be able to carry, or own, or possess, a firearm

anywhere within the state- which is their fundamental, ancient, constitutionally

---

[4] The state of Hawaii believes the **lawful** exercise of Second Amendment rights, by persons who are onerously vetted, both for carrying concealed weapons <u>and</u> also for the mere exercise of owning and possessing a firearm through the PTA scheme, prior to owning or possessing or carrying, are a danger and treats them like criminals.  See Testimony of the Attorney General in support of SB1230 Hawaii's massive effort to stop *Bruen* in its tracks.  *See* Exhibit 2.

[5] The State of Hawaii issued extensive rules regarding PTA as well. *See* Exhibit 1 infra.  Hawaii laws governs but delegates substantial authority and discretion to individual counties and the respective police chiefs.  Each county therefore has the ability to add more layers of bureaucracy designed to abuse and frustrate the exercise of Second Amendment rights.  County did exactly that with the promulgation of additional burdensome PTA requirements.  Herein, Plaintiffs, at present, only attack the policy, custom and practice of County in the delay of the issuance of PTA and then only to the extent that it violates current state law.

protected and guaranteed right.[6]  In response to *Bruen,* the state legislature sought to severely restrict law abiding peoples' right to defend themselves in the event of confrontation, at home and in public. The legislature specifically found and stated that it intended to restrict carrying and possessing arms, which it characterized as "dangerous", by law-abiding persons with concealed carry licenses;[7]

18.   County, not to outdone by the State of Hawaii in trying to block the exercise of Second Amendment rights in the state generally, promulgated new County specific abusive rules regarding both the carrying of concealed weapons and also PTA;[8]

19.   Hawaii State law and County rules are both replete with nearly boundless discretion to deny applications to exercise Second Amendment rights. Both the State of Hawaii and County have an extensive history of violating and blocking Second Amendment rights and doing so so severely that they have quickly settled when sued.  *See Nelson v. City and Cnty. of Honolulu,* 1:24-cv-00100-MWJS-RT Doc. No. [25] (stipulated injunction which compelled Honolulu

---

[6] To this day, Hawaii relies on the laws of kings and laws specifically designed to destroy Second Amendment rights to justify their uninterrupted mission to block the exercise of Second Amendment rights.  *See Wolford v Lopez*, 24-1046, docket #41, at 5 and 32.

[7] The State believes that all Second Amendment rights are by their very nature dangerous and that those who exercise Second Amendment rights are by their very nature dangerous people.

[8] *See* Exhibit 3.

to stop its policy of excessive delays of over one year to issue concealed carry permits); *Fotoudis v. City and Cnty. of Honolulu*, 54 F. Supp. 3d 1136 (D. Haw. 2014) (overturning Hawaii's ban on green card holders owning firearms); *Yukutake v. Conners*, 554 F. Supp. 3d 1074 (D. Haw. 2021) (overturned two of Hawaii's firearm registrations law and via settlement removed two County of Honolulu firearm policies). *Kealoha v Cnty. of Hawaii,* 1:25-cv-00281 Doc. No. [14] (stipulated injunction prohibiting County of Hawaii from using police investigations to prohibit ownership of firearms); *Shiroma v. Hawaii Cnty,* 1:25-CV-00181 JAO-WRP Doc. No. [23] (stipulated injunction prohibiting County of Hawaii from enforcing a lifetime ban on firearm ownership for misdemeanor crime); *Santucci v. City and Cnty. of Honolulu*, No. 22-CV-00142-DKW-KJM, 2022 WL 17176902 (D. Haw. Nov. 23, 2022) (enjoining Honolulu's firearms mental health policy); *Choda v. Hawaii Cnty,* 1:21-cv-00384-DKW-RT Doc. No. [14] (stipulated injunction as to the County of Hawaii's policy which prohibited firearms ownership for those convicted of certain nonviolent crimes); *Roa v. City and Cnty. of Honolulu,* 1:21-cv-00333-DKW-KJM Doc. No. [14] (stipulated injunction enjoined Honolulu from prohibiting firearms ownership for certain infractions); *Nickel v. Connors*, 1:20-cv-00330-JMS-RT Doc. No. [22] (stipulated injunction enjoining Hawaii's ban on U.S. Nationals owning firearms); *Maui Ammo & Gun Supply v. Maui Cnty.,* 1:22CV00138 (Maui's restriction on the sale

of electric gun); *Roberts v. Connors*, 1:19CV00165 Doc. No. [25] (settlement

compelling the State to allow green holder to apply for a concealed carry license);

*Roberts v. City and Cnty. of Honolulu*, 1:15CV00467 (settlement compelling

Honolulu County to remove its restrictions on U.S. green card holders owning

firearms); *Pagba v. City and Cnty. of Honolulu*, 1:22CV00521 (removal of

Hawaii's lifetime ban on firearm ownership for convictions for misdemeanor

crimes after onset of litigation); *Grell v. County of Hawaii* CV 23-00328 JAO-RT

Doc. No. [20] (stipulated injunction requiring County of Hawaii to remove its

required waiver of all privileges including attorney client privilege); *Day v. Cnty.*

*of Hawaii,* 1:23-cv-00576-LEK-RT Doc. No. [19] (stipulated injunction regarding

County of Hawaii's concealed carry permit issuance policies); *Yukutake v.*

*Shikada,* 1:22-cv-00323-JAO-KJM Doc. No. [41] (stipulated injunction which

enjoined Hawaii's ban on billy club carry); *Roa v. Lopez, 1*:23-cv-00079-MWJS-

RT (Hawaii removed its ban on switchblades after the onset of litigation);

*Thompson v. Hawaii,* 1:24-cv-00333-DKW-WRP (stipulated injunction regarding

County of Hawaii's mental health policy); *Peter v. Lopez,* 1:24-cv-00508-MWJS-

RT Doc. No [18] (stipulated injunction enjoining Hawaii's ban on possession of

firearms by individuals residing in Hawaii pursuant to the Compact of Free

Association); *Roberts v. Ballard*, 1:18CV00125 (legalized electric weapons after

the onset of litigation); *Teter v. Lopez*, 125 F.4th 1301 (9th Cir. 2025) (legalizing

possession of butterfly knifes after the onset of litigation);

20.   County's repeated efforts to violate Second Amendment rights of the people by misapplying state law, which was specifically designed with abusive ends to frustrate the exercise of Second Amendment rights already, is well-established.  Since *Bruen*, issued in June of 2022, and the promulgation of state and County laws specifically designed to frustrate and deny Second Amendment rights, passed in late 2022 and summer of 2023, County[9] has already settled no fewer than seven lawsuits, *see* above.  It thus has an established history of intentionally violating state law to further infringe, delay or block the exercise of second Amendment rights;

21.   The Supreme Court in *New York State Rifle & Pistol Ass'n v. Bruen* found "the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the

---

[9] There are only five counties in Hawaii.  Kalawao county may soon cease to exist having fewer than one hundred residents and is a county in spirit only and has no actual county government and only has a Department of Health appointee to manage the few residents.  WWW.OHA.org, last visited February 7, 2026.  Hawaii county, though the "big" island, is the second most populated across its vast rural geography.

individual's conduct falls outside the Second Amendment's "unqualified command." 597 U.S. at 24, 142 S.Ct. 2111 (citation omitted);

22. Hawaii state law requires that a citizen obtain a permit in order to acquire a firearm, a "PTA":

> (a) No person shall acquire the ownership of a firearm, whether usable or unusable, serviceable or unserviceable, modern or antique, registered under prior law or by a prior owner or unregistered, either by purchase, gift, inheritance, bequest, or in any other manner, whether procured in the State or imported by mail, express, freight, or otherwise, until the person has first procured from the chief of police of the county of the person's place of business or, if there is no place of business, the person's residence or, if there is neither place of business nor residence, the person's place of sojourn, a permit to acquire the ownership of a firearm as prescribed in this section. When title to any firearm is acquired by inheritance or bequest, the foregoing permit shall be obtained before taking possession of the firearm; provided that upon presentation of a copy of the death certificate of the owner making the bequest, any heir or legatee may transfer the inherited or bequeathed firearm directly to a dealer licensed under section 134-31 or licensed by the United States Department of Justice without complying with the requirements of this section.

Haw. Rev. Stat. Ann. § 134-2 (West);

23. In relevant part, Hawaii state law requires that the issuing County process a permit to acquire application within forty days of the person applying.

> (e) The permit application form shall be signed by the applicant and issuing authority. One copy of the permit shall be retained by the issuing authority as a permanent official record. Except for sales to dealers licensed under section 134-31, dealers licensed by the United States Department of Justice, law enforcement officers, or where any firearm is registered pursuant to section 134-3(a), no permit shall be issued to an applicant earlier than fourteen calendar days after the date of the application; provided that **a permit shall**

**be issued or the application denied before the fortieth day from the date of application**…. (Emphasis added)

*See* H.R.S. § 134-2(e);

24.    Despite state law requiring otherwise, County routinely takes more than forty days to process a permit to acquire application;

25.    Plaintiffs can point to at least two occasions, beyond the named Plaintiffs, where County has taken longer than forty days to process a permit to acquire;

26.    In addition to Plaintiffs and Declarants, Plaintiffs are aware of at least several other occasions where County has taken longer than forty days to process a permit to acquire application;

27.    County delays the PTA process to abuse and frustrate those who seek to exercise their Second Amendment rights;

28.    On November 12, 2025, Mr. Douglass Phillips, not a Plaintiff, applied for a permit to acquire a firearm. His application was not processed until December 24, 2025, and in total he had to wait forty-three (43) days to receive his PTA.  *See* attached Declaration of Douglas Phillips as Exhibit 4;

29.    On November 5, 2025, Mr. George Martin, not a Plaintiff, applied for a permit to acquire a firearm.  Mr. Martin received his PTA on December 17, 2025, some forty-one (41) days later.    *See* attached Declaration of George Martin attached as Exhibit 5;

## V      PLAINTIFFS

30.    Plaintiff Justin Arnold is a resident of the County of Hawaii and a United States citizen;

31.    Plaintiff Arnold is employed as a firearm instructor;

32.    Plaintiff Arnold currently legally owns firearms in the County of Hawaii;

33.    On July 23, 2025, Plaintiff Arnold applied for a permit to acquire a firearm.  On September 25, 2025, Plaintiff Arnold applied for a second permit to acquire;

34.    His July 23, 2025, permit was not processed until September 9, 2025, and his September 25, 2025, permit was not processed until November 5, 2025. Mr. Arnold thus waited forty-eight (48) and forty-one (41) days respectively for his permits to acquire to be processed;

35.    Plaintiff Arnold routinely buys firearms and intends to buy additional firearms in the near future;

36.    Plaintiff Arnold is not disqualified under federal or state law from acquiring, owning or possessing a firearm;

37.    Plaintiff Arnold has completed all necessary state and County administrative requirements to obtain a PTA;

38.    Plaintiff Arnold plans to buy additional firearms in the near future,

therefore he continues to be harmed by the County's custom, policy or practice of taking greater than forty days to process permits to acquire firearms;

39.    Plaintiff Arnold was injured by County's custom, policy or practice of delay of his PTA in excess of forty days and in violation of State law[10];

40.    Plaintiff Bryan Garland is a resident of the County of Hawaii and a United States citizen;

41.    Plaintiff Bryan Garland is currently employed as a property manager in the County of Hawaii;

42.    Plaintiff Garland legally owns firearms in the County of Hawaii;

43.    On November 18, 2025, Plaintiff Garland applied for a permit to acquire a firearm;

44.    His permit was not processed until January 6, 2026. Mr. Garland had to wait forty-eight (48) days for his permit to be processed;

45.    Plaintiff Garland buys firearms and intends to buy additional firearms in the near future;

46.    Plaintiff Garland is not disqualified under federal or state law from acquiring, owning or possessing a firearm;

47.    Plaintiff Garland has completed all necessary state and County administrative requirements to obtain a PTA;

---

[10] See Exhibit 6.

48.    Plaintiff Garland plans to buy additional firearms in the near future, therefore he continues to be harmed by the County's custom, policy or practice of taking greater than forty days to process permits to acquire;

49.    Plaintiff Garland was injured by County's custom, policy or practice of delay of his PTA in excess of forty days and in violation of State law[11];

50.    Plaintiff James Grell is a resident of the County of Hawaii and a United States citizen;

51.    Plaintiff Grell is employed as an employee of the water service company.

52.    Plaintiff Grell currently legally owns firearms in the County of Hawaii;

53.    On July 9, 2025, Plaintiff Grell applied for a permit to acquire a firearm;

54.    His permit was not processed until September 3, 2025, and thus he waited fifty-five (55) days;

55.    Plaintiff Grell routinely buys firearms and intends to buy additional firearms in the near future;

56.    Plaintiff Grell is not disqualified under federal or state law from acquiring, owning or possessing a firearm;

---

[11] See Exhibit 7.

57.    Plaintiff Grell has completed all necessary state and County administrative requirements to obtain a PTA;

58.    Plaintiff Grell plans to buy additional firearms in the near future, therefore he continues to be harmed by the County's custom, policy or practice of taking greater than forty days to process permits to acquire firearms;

59.    Plaintiff Grell was injured by County's custom, policy or practice of delay of his PTA in excess of forty days and in violation of State law[12];

60.    Plaintiff Andrew White is a resident of the County of Hawaii and a United States citizen;

61.    Plaintiff White is employed as a project manager;

62.    On August 29, 2025, Plaintiff White applied for a permit to acquire a firearm;

63.    Mr. White has not received either an approval or a denial letter from County as of February 9, 2026.  From August 29, 2025, to February 9, 2026, is one-hundred-sixty-five (165) days that have passed without County issuing either a denial nor an approval letter;

64.    Plaintiff White routinely buys firearms and intends to buy additional firearms in the near future;

65.    Plaintiff White is not disqualified under federal or state law from

---

[12] See Exhibit 8.

acquiring, owning or possessing a firearm;

66.    Plaintiff White has completed all necessary state and County
administrative requirements to obtain a PTA;

67.    Plaintiff White plans to buy additional firearms in the near future,
therefore he continues to be harmed by the County's custom, policy or practice of
taking greater than forty days to process permits to acquire firearms[13];

## VI

### COUNT I
### U.S. CONST., AMEND. II As Made Applicable to the States by U.S. CONST., AMEND. XIII

68.    Plaintiffs repeat and reallege the allegations of all preceding Paragraphs
above, as if set forth verbatim herein;

69.    The Second Amendment to the United States Constitution states, in
pertinent part, that "the right of the people to keep and bear arms, shall not be
infringed." The Second Amendment further "elevates above all other interests the
right of law-abiding, responsible citizens to use arms in defense of hearth and home."
*District of Columbia v. Heller*, 554 U.S. 570, 635 (2008);

70.    As the Court subsequently held in *McDonald v. City of Chicago*, 561
U.S. 742, 130 S.Ct. 3020 (2010): "it is clear that the Framers and ratifiers of the

---

[13] See Exhibit 9.

Fourteenth Amendment counted the right to keep and bear arms among those fundamental rights necessary to our system of ordered liberty." 130 S.Ct. at 3043;

71.    The Supreme Court in *New York State Rifle & Pistol Ass'n, v. Bruen*, 597 U.S. 1 (2022) holds that restrictions on Second Amendment rights must be justified through the use of historical laws that similarly restricted firearms usage;

72.    Other courts have found significantly shorter waiting periods violate the Second Amendment;

73.    The Tenth Circuit recently struck down New Mexico's seven day waiting period to own a firearm. In doing so the Court found "[n]othing in the record suggests that the historically understood right to keep and bear arms tolerated universal and indiscriminate burdens on purchasing or acquiring firearms with no way to enjoy the full right." *Ortega v. Grisham*, 148 F.4th 1134, 1155 (10th Cir. 2025);

74.    Similarly in preliminarily enjoining Maine's three-day waiting period the Court there found "[t]he waiting period is not narrow since it applies to very near everyone seeking to purchase a firearm and their entire right to keep and bear any firearm at all through purchase is temporarily banned." *Beckwith v. Frey*, 766 F. Supp. 3d 123, 134 (D. Me. 2025);

75.    Acquisition through purchase of a firearm through a Federally Licensed Firearms Dealer requires the "FFL" to conduct an "instant" background check

through "NICS", the National Instant Criminal Background Checks System, *See* https://www.fbi.gov/how-we-can-help-you/more-fbi-services-and-information/nics[14];

76.    Putting aside the State of Hawaii's other questionable statutory delays, County's application of the State law and the dubious limit of forty days regarding the issuance of a PTA, it is County's policy, custom and practice to just ignore the forty day state law limit;

77.    County treats the exercise of the Second Amendment as a second-class and or disfavored right;

78.    County's policy, rule, habit and custom of taking more than forty days to process a permit to acquire operates to burden Plaintiffs and others similarly situated to them, with regard to their ability or right to purchase, possess, own and keep firearms within their home and is a perfect example of the execution of a state law put to abusive ends;

79.    County has violated Plaintiffs' Second Amendment rights through an independent city policy because state law requires that a permit to acquire be processed in forty days or less and County is taking longer than that;

---

[14] 89% of the checks are "instant", while 98% can be resolved in three days.  See www.nssf.org, last visited February 7, 2026.  Plaintiffs do not concede that any sort of so-called "background check" or delay must be completed or submitted by those who exercise Second Amendment rights.

80.    County also violates the Second Amendment because County's conduct is ultra vires;

81.    Ultra vires conduct is inherently arbitrary. *Cine SK8, Inc. v. Town of Henrietta* 507 F.3d 778, 790 (2d Cir. 2007);

82.    *Bruen* commands that government may not have discretion in making determinations on Second Amendment rights. *See Bruen*, 142 S. Ct. at 2138 n.9. (Prohibiting governments from engaging in the "appraisal of facts, the exercise of judgment, and the formation of an opinion)";[15]

83.    County's routine processing times are ultra vires because they are in excess of what state law allows to process a permit to acquire;

84.    Thus, County's conduct violates the Second Amendment on these grounds as well;

85.    In the alternative, County's application of H.R.S. § 134-2(e) is unconstitutional as applied to Plaintiffs;

86.    The challenged County action violates the Second Amendment,

---

[15] Assuming that an "instant" check can occur, without County police department or state of Hawaii involvement, and only looking at purchases from an FFL, and notwithstanding that Plaintiffs do not concede that any sort of "check" or delay is constitutional, the existence of an "instant" check, now in place for decades at FFL establishments, means the State of Hawaii's laws, County's rules, and County's application of its rules and State law, are all deep and extensive evidence of an abusive end and specific intent to block or delay the exercise of Second Amendment rights.

WHEREFORE, Plaintiffs seek declaratory and injunctive relief as set forth below;

## COUNT II (Procedural Due Process)

87.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if set forth herein;

88.    County's excessive delays also violate procedural due process. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 547 (1985) ("At some point, a delay in the post-termination hearing would become a constitutional violation.");[16]

89.    In *Kuck v. Danaher*, 600 F.3d 159, 161 (2d Cir. 2010) the 11th Circuit found "a practice of improperly denying permits, unnecessarily prolonging the appeals that follow, and then quietly resolving disputes at the last minute"…"stated a procedural due process claim." *Id.;*

90.    To demonstrate a claim for procedural due process a litigant must fulfill the test laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). This test requires that we balance: "(1) the private interest at stake; (2) the risk of an erroneous deprivation of that interest through the procedures used and the probable value (if any) of alternative procedures; (3) the government's interest, including the possible burdens of alternative procedures." *Id.;*

91.    Here, Plaintiffs can demonstrate a violation of procedural due process;

92.    They fulfill the first prong of *Mathews* because they have a protected

---

[16] *See* NICS discussion infra.

liberty interest in owning firearms;

93.    As to the second prong, Plaintiffs, and other similarly situated, suffer a threat of erroneous deprivation because County will not process their current and future applications within forty days.  Thus, there is an amount of time where Plaintiffs are unable to possess the firearm(s) associated with their permit to acquire solely due to County taking more than forty days to process a permit to acquire;

94.    Furthermore, there is already an alternative procedure for County to use. That being, County could simply use the process laid out in state law. As the *Kuck* Court found, the second prong is fulfilled "[b]ecause this practice appears to have affected a significant number of applicants, and the delay is considerable, the second Mathews factor weighs in favor of Kuck at this stage of the proceedings." *Kuck v. Danaher*, 600 F.3d 159, 166 (2d Cir. 2010);

95.    As to the third prong, County has no interest in placing a delay on Plaintiffs' permits to acquire which violates state law.  As Judge Watson found in granting a preliminary injunction in another firearms case where the City and County of Honolulu was found to be violating state law, "it is in the public interest to have the language of Hawai'i law enforced". *Santucci v. City & Cty. of Honolulu*, 2022 U.S. Dist. LEXIS 213030, (D. Haw. Nov. 23, 2022);

96.    Therefore, Plaintiffs have alleged a violation of procedural due process based on County taking more than forty days to process their permit to acquire

applications;

97.    For the reasons laid out above, County's, and Hawaii County Police department's rules, customs, policy, and or practices violate Plaintiffs' Procedural Due Process rights;

## **COUNT III (Substantive Due Process)**

98.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if set forth herein;

99.    When a Defendant, such as County, acts arbitrarily and/or unreasonably it violates substantive due process;

100.    County's policy is ultra vires because state law requires County to process a permit to acquire in forty days or less and County routinely takes longer than forty days to process a permit to acquire;

101.    Plaintiffs have a liberty interest and a fundamental right interest in exercising their Second Amendment rights to keep and bear arms, including possessing firearms in their home for lawful self-defense;

102.    For purposes of all Counts and Claims the Defendant has acted under "color of state law" within the meaning of Section 1983;

103.    County, by denying the Plaintiffs the ability to exercise their Second Amendment rights to own firearms in a way that contradicts what state law requires, i.e. in a ultra vires manner, has acted arbitrarily and unreasonably;

104.    When government, such as County, has acted in an arbitrary, and or unreasonable manner that impacts a protected liberty or property interest, it has violated substantive due process;

105.    "[T]he Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Foucha v. Louisiana,* 504 U.S. 71, 78 (1992);

106.   Here, County's policy, custom, rule, habit, is inherently arbitrary and tainted with fundamental irregularities due to the fact it does not comply with state law;

107.   Plaintiffs have a right to substantive due process which means that his permit to acquire application cannot be denied in an arbitrary or unreasonable manner;

108.    In *Cine SK8, Inc. v. Town of Henrietta* 507 F.3d 778 (2d Cir. 2007) the Second Circuit found ultra vires conduct violates due process. "[I]f the Town Board did not have authority for the actions it took regarding Fun Quest's permit—as it appears it did not—the Board's actions were ultra vires and, as a result, sufficiently arbitrary to amount to a substantive due process violation." *Id.* at 790;.

109.    In this case, a due process violation exists because County claims authority to regulate PTA applications pursuant to state law. County's denial of Plaintiff's firearms is contrary to the authority state law provides;

110.  For the reasons laid out above, County's, and Hawaii county Police department's rules, customs, policy, and or practices violate Plaintiff's Substantive Due Process rights;

## <u>COUNT IV (DECLARATORY JUDGMENT)</u>

111.  Plaintiffs repeat and reallege the allegations of Paragraphs above, as if set forth herein;

112.  The Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction, any court of the United States may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. 2201(a);

113.  Absent a declaratory judgment, there is a substantial likelihood that Plaintiff will suffer irreparable injury in the future;

114.  There is an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment;

115.  This Court possesses an independent basis for jurisdiction over the parties;

116.  Plaintiffs request a declaratory judgment declaring that Defendant's laws, customs, rules, habits and policies which deny Plaintiffs the right to own, possess and or acquire, a firearm violates Plaintiffs' Second Amendment rights;

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs request that judgment be entered in their favor and against Defendant as follows:

1.     An order preliminarily and permanently compelling County, its officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, to process permits to acquire in forty days or less;

2.     Preliminarily, and thereafter permanently enjoin County from taking more than forty days to process a permit to acquire a firearm, as applied to Plaintiffs when processing their individual permits to acquire;

3.     Declare that County's custom, practice or policy of taking more than forty days to process a permit to acquire a firearm is unconstitutional both as applied to Plaintiffs and to the general public;

4.     Award nominal damages;

5.     Award compensatory damages;

6.     Award costs of the suit, including attorneys' fees and costs pursuant to 42 U.S.C. §1988;

7.     Such other relief consistent with the injunction as appropriate; and

8.     Such other further relief as the Court deems just and appropriate.

DATED:  Honolulu, Hawaii, <u>February 10, 2026</u>.

Respectfully submitted,

<u>/s/ *Kevin O'Grady*</u>

Kevin Gerard O'Grady
Law Office of Kevin O'Grady
1164 Bishop Street, Suite 1605
Honlululu, Hawaii 96813
(808) 521-3367
Hawaii Bar No. 8817
<u>Kevin@KevinOGradyLaw.Com</u>

<u>/s/ *Alan Alexander Beck*</u>

Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA 92123
(619) 905-9105
Hawaii Bar No. 9145

<u>Alan.alexander.beck@gmail.com</u>

## VERIFICATION

I, Justin Arnold, declare as follows:

1. I am a Plaintiff in the present case and a citizen of the United States of

America.

2 . I have personal knowledge of myself, my activities, and my intentions ,

including those set out in the forgoing *Verified Complaint for Declaratory and*

*Injunctive Relief,* and if called on to testify, I would competently testify as to the

matters stated herein.

3. I verify under penalty of perjury under the laws of the United States of

America that the factual statements in this *Verified Complaint for Declaratory and*

*Injunctive Relief* concerning myself, my activities and my intentions are true and

correct.

Executed on ____Feb____ 9 , 2026

# VERIFICATION

I, Bryan Garland, declare as follows:

1. I am a Plaintiff in the present case and a citizen of the United States of America.

2 . I have personal knowledge of myself, my activities, and my intentions , including those set out in the forgoing *Verified Complaint for Declaratory and Injunctive Relief,* and if called on to testify, I would competently testify as to the matters stated herein.

3. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *Verified Complaint for Declaratory and Injunctive Relief* concerning myself, my activities and my intentions are true and correct.

Executed on _____Feb   09_____, 2026

_Bry Garland_ (signature)

## VERIFICATION

I, James Grell, declare as follows:

1. I am a Plaintiff in the present case and a citizen of the United States of

America.

2 . I have personal knowledge of myself, my activities, and my intentions ,

including those set out in the forgoing *Verified Complaint for Declaratory and*

*Injunctive Relief,* and if called on to testify, I would competently testify as to the

matters stated herein.

3. I verify under penalty of perjury under the laws of the United States of

America that the factual statements in this *Verified Complaint for Declaratory and*

*Injunctive Relief* concerning myself, my activities and my intentions are true and

correct.

Executed on ___February  9th___ , 2026

30

## VERIFICATION

I, Andrew White, declare as follows:

1. I am a Plaintiff in the present case and a citizen of the United States of

America.

2 . I have personal knowledge of myself, my activities, and my intentions ,

including those set out in the forgoing *Verified Complaint for Declaratory and*

*Injunctive Relief,* and if called on to testify, I would competently testify as to the

matters stated herein.

3. I verify under penalty of perjury under the laws of the United States of

America that the factual statements in this *Verified Complaint for Declaratory and*

*Injunctive Relief* concerning myself, my activities and my intentions are true and

correct.

Executed on _____<u>February 9</u>___, 2026

_____