EXHIBIT

3

HAWAI'I POLICE DEPARTMENT ADMINISTRATIVE RULES

COUNTY OF HAWAI'I

Rule 1 FIREARMS PERMITS AND LICENSES was adopted immediately
following the repeal of the RULES AND REGULATIONS OF THE HAWAI'I
POLICE DEPARTMENT GOVERNING THE ISSUANCE OF LICENSES TO
CARRY CONCEALED AND UNCONCEALED WEAPONS adopted October 29,
1997.

## HAWAIʻI POLICE DEPARTMENT

## RULE 1: FIREARMS PERMITS AND LICENSES

## CHAPTER 1

### Subchapter 1
### Registration and Permitting

§1-1-1      Definitions

§1-1-2      Normal business hours

§1-1-3      Procedures for acquiring and registering firearms

§1-1-4      Registering firearms brought in from out of state

### Subchapter 2
### Applications for License to Carry Firearm, Concealed or Unconcealed

§1-2-1      Qualifications, training, and testing to carry and use
            firearm in a safe manner

§1-2-2      Application procedures for License to Carry Firearm,
            concealed or unconcealed

§1-2-3      Detectives, private detectives, investigators, guards,
            detective agencies, and guard agencies

§1-2-4      Initial review of application by Firearms Section;
            background checks

§1-2-5      Standards for issuance of License to Carry
            Unconcealed Firearm

§1-2-6      Chief's decision on application for License to Carry
            Firearm, concealed or unconcealed

i

§1-2-7      License card; expiration; renewal; lost or stolen cards

§1-2-8      Impounding, Voiding and Revoking Permits, Licenses
            and Instructor Verifications

§1-2-9      Appeal procedures

## **Subchapter 3**
## **Instructor verifications and training certifications**

§1-3-1      Instructor verifications

§1-3-2      Training certifications by verified instructors

## **Subchapter 4**
## **General Provisions**

§1-4-1      Purpose and intent; severability

## Subchapter 1
## Registration and Permitting

### §1-1-1  Definitions.

Unless the context indicates otherwise, as used in this chapter:

"Acquire" has the same meaning as in Section 134-1, Hawaiʻi Revised Statutes, as amended.

"Alcohol" has the same meaning as in Section 281-1, Hawaiʻi Revised Statutes, as amended.

"Antique pistol or revolver" has the same meaning as in Section 134-1, Hawaiʻi Revised Statutes, as amended.

"HI Charter" means the Hawaiʻi County Charter (2002), as amended.

"Concealed" has the same meaning as in Section 134-1, Hawaiʻi Revised Statutes, as amended.

"Concealed License" means a License to Carry Concealed Firearm.

"Controlled substance" has the same meaning as in Section 134-9.4, Hawaiʻi Revised Statutes, as amended.

"Crime of violence" has the same meaning as in Section 134-1, Hawaiʻi Revised Statutes, as amended.

"Criminal offense relating to firearms" has the same meaning as in Section 134-1, Hawaiʻi Revised Statutes, as amended.

"Detective", "private detective", or "investigator" has the same meaning as in Section 463-1, Hawaiʻi Revised Statutes, as amended.

"Detective Agency" has the same meaning as in Section 463-1, Hawaiʻi Revised Statutes, as amended.

"Firearm" has the same meaning as in Section 134-1, Hawaiʻi Revised Statutes, as amended.

"Guard" has the same meaning as in Section 463-1, Hawaiʻi Revised Statutes, as amended.

"Guard Agency" has the same meaning as in Section 463-1, Hawaiʻi Revised Statutes, as amended.

"HRS" means the Hawaiʻi Revised Statutes, as amended.

"Intoxicating liquor" has the same meaning as in Section 281-1, Hawaiʻi Revised Statutes, as amended.

"License to Carry Firearm" and "License" mean both Concealed Licenses and Unconcealed Licenses.

"Pistol" or "revolver" has the same meaning as in Section 134-1, Hawaiʻi Revised Statutes, as amended.

"Rules" means the rules of the Hawaiʻi Police Department, Chapter 1, governing Firearms Permits and Licenses.

"Unconcealed" has the same meaning as in Section 134-1, Hawaiʻi Revised Statutes, as amended.

"Unconcealed License" means a License to Carry Unconcealed Firearm.

[Eff. October 1, 2025] (Auth: HRS §§ 134-1, 134-9, 281-1 and 463-1; HI Charter §7-2-4(c)) (Imp: HRS §§ 134-2, 134-9, 134-13 and 463-1).

## §1-1-2  Normal business hours.

The Firearms Section of the Records and Identification Section, Hawaiʻi Police Department, 349 Kapiolani Street, Hilo, Hawaiʻi, 96720, normal operating hours are Mondays, Tuesdays, Wednesdays, Thursdays, and Fridays, excluding holidays, 9:00 a.m. to 3:00 p.m. by appointment only.  Pahoa, Kaʻu, North Kohala, South Kohala, Hāmākua, and North Hilo Stations provide firearm services to the public by appointment only and each station must be contacted directly.  These operating hours are included within the meaning of "normal business hours" as used throughout this chapter. [Eff. October 1, 2025] (Auth: HI Charter §7-2-4(c)) (Imp: HRS §§ 134-2, 134-3 and 134-9).

## §1-1-3  Procedures for acquiring and registering firearms.

(a)  Any person attempting to acquire a firearm of any description, whether usable or unusable, serviceable or unserviceable, modern or antique, shall appear in person at their scheduled appointment at any applicable station to submit the following:

(1)  Valid government-issued photo identification.

(2)  All completed forms as prescribed by the Hawaiʻi Police Department and the Department of the Attorney General pursuant to HRS Sections 134-2 and 134-3.

(3)  Proof of training, conducted by a verified instructor, as required by HRS Section 134-2(g).  Proof of training for a Permit to Acquire a pistol or revolver, conducted pursuant to HRS Sections 134-2(g)(2), (g)(3), or (g)(4), shall comply with section 1-3-2 of these Rules.

(4)  A nonrefundable fee in an amount equal to the fee charged by the Hawaiʻi Criminal Justice Data Center pursuant to HRS Section 846-2.7.  In the case of a joint application, the fee shall be charged to each person.  Only one fee shall be charged per person.

(5)  Information as provided in subsection (c).

(b)  The Firearms Section shall conduct a background check of the applicant, in accordance with HRS Sections 134-2 and 134-7, to ensure the applicant is lawfully permitted to possess or acquire a firearm.

(c)  To allow the Chief to determine whether the applicant has "the essential character or temperament necessary to be entrusted with a firearm" pursuant to HRS Section 134-2(e), and whether the applicant satisfies the requirements of HRS Sections 134-7(c) or 134-7(e), the Chief shall consider:

(1)  Information from a health care provider indicating that the person has had suicidal or homicidal thoughts or tendencies within the preceding five years.  To allow the Chief to make this determination, the applicant shall provide:

2

(A)    The completed and signed HIPAA compliant authorization for
release of all mental health information, including psychiatric,
behavioral health, and substance abuse information, from all
medical sources, including but not limited to all health care
providers, health care plans, clinics, laboratories, pharmacies,
medical facilities, other health care providers, and government
entities.  The applicant shall also complete any forms required by
the applicant's health care provider or relevant government entity
for release of mental health information;

(B)    The completed and signed State of Hawaiʻi, Adult Mental Health
Division Authorization for Use or Disclosure of Protected Health
Information form, if required by the State of Hawaiʻi; and

(C)    Information as required by HRS Section 134-2(c)(2).

(2)    Statements or actions by the person indicating any dangerous propensity
or violent animus toward one or more individuals or groups, including
groups based on race, color, national origin, ancestry, sex, gender
identity, gender expression, sexual orientation, age, disability, religion, or
any other characteristic, and the propensity or animus is of a nature or to
an extent that would objectively indicate to a reasonable observer that it
would not be in the interest of the public health, safety, or welfare for the
person to own, possess, or control a firearm or ammunition.  The Chief
may consider information provided as part of the application, as well as
any other information available to the Hawaiʻi Police Department or the
general public, in making this determination; and

(3)    Other information that would lead a reasonable, objective observer to
conclude that the person presents or would present a danger to the
community as a result of acquiring or possessing a firearm or intends or is
likely to use a firearm for an unlawful purpose or in an unlawful manner.
In making this determination, the Chief shall consider the totality of the
circumstances, including the following objective factors:

(A)    Whether the applicant has been involved in any incidents of alleged
domestic violence within the three years preceding the application;

(B)    Whether the applicant has been involved in any incidents of
careless handling, storage, or carrying of a firearm within the three
years preceding the application;

(C)    Whether the applicant has been involved in incidents of abuse of
alcohol, intoxicating liquor, or controlled substances, including but
not limited to operating a vehicle under the influence of an
intoxicant, within the three years preceding the application;

(D)    Whether the applicant has been involved in a crime of violence
within the three years preceding the application;

    (E)    Any other specific and articulable indicia that would indicate to a reasonable observer, when considering relevant objective factors, that the applicant lacks the character or temperament to be entrusted with a firearm; and

    (F)    Any other factors provided by law, giving more weight to incidents that are serious or recent, and less weight to incidents that are minor or occurred in the distant past.  For purposes of this section, "involved in" generally requires a conviction or other court ruling; however, the Chief may also consider evidence that the applicant has been repeatedly arrested for or otherwise repeatedly implicated in dangerous or violent conduct that would lead a reasonable, objective observer to conclude that the person presents or would present a danger to the community as a result of acquiring or possessing a firearm or is likely to use a firearm for an unlawful purpose or in an unlawful manner.  The Records and Identification Section may adopt a Procedure Manual to provide additional objective guidelines in implementing this section.  The Chief may consider information provided as part of the application, as well as any other information available to the Hawai'i Police Department or the general public, in making these determinations.

        The Chief shall issue a Permit to an applicant who meets all relevant qualifications unless the Hawai'i Police Department possesses specific and articulable information demonstrating that the applicant lacks the essential character or temperament necessary to be entrusted with a firearm or is otherwise prohibited from ownership or possession of a firearm.

(d)    Permits to Acquire any pistol or revolver require a separate application and Permit for each transaction.  The permitting and registration process for pistols or revolvers is as follows:

    (1)    Purchase from a licensed dealer:

        (A)    The applicant shall present the permit to the dealer and take possession of the pistol or revolver within the period of time required by HRS Section 134-2.

        (B)    Any permit that is not used for the acquisition of a pistol or revolver within the period of time prescribed by HRS Section 134-2 is void.  Such permits shall be returned to the Firearms Section for proper recordation and disposition.

        (C)    The dealer shall cause the permit to be delivered to the Firearms Section within the period of time required by HRS Section 134-2 of the applicant taking possession of the firearm.

        (D)    The dealer shall provide the Firearms Section with the serial number, make, model, caliber, and barrel length of the pistol or revolver being acquired, as well as the seller's business name, address, and phone number, within the period of time required by

> HRS Section 134-2 after the applicant takes possession of the
> firearm.
>
> (E)   The applicant shall complete the registration on-line or in person
> with the Firearms Section within the period of time required by HRS
> Section 134-2 once the applicant takes possession of the pistol or
> revolver.

(2)   Purchase or transfer from a private party:

    (A)   The applicant shall apply for a permit with the Firearms Section and
shall provide the serial number, make, model, caliber, and barrel
length of the pistol or revolver being acquired, as well as the
individual seller's name, address, and phone number.

    (B)   The applicant shall present the permit to the seller or transferor
and take possession of the pistol or revolver within the period of
time required by HRS Section 134-2.

    (C)   Any Permit that is not used for the acquisition of a pistol or revolver
within the period of time prescribed by HRS Section 134-2 is void.

    (D)   The seller or transferor shall cause the permit to be delivered to the
Firearms Section within the period of time required by HRS Section
134-2 of the applicant taking possession of the firearm.

    (E)   The applicant shall complete the registration in person with the
Firearms Section and present the firearm to the Firearms Section
for inspection within the period of time required by HRS Section
134-2 once the applicant takes possession of the firearm.

(e)   Permits to Acquire any rifle or shotgun entitles the applicant to purchase rifles or
shotguns within the period of time prescribed by HRS Section 134-2 from the
date of issue without a separate application and permit for each acquisition,
subject to HRS Sections 134-2(e), 134-7, and 134-13. The permitting and
registration process for rifles and shotguns is otherwise the same as that for
pistols and revolvers, as set forth in subsection (d) of these Rules.

(f)   The applicant's information from the permit shall be recorded on the Firearms
Registration form.

(g)   The applicant shall be required to sign the Firearms Registration form in ink.

(h)   The Firearms Registration form does not authorize the carrying of the firearm,
either concealed or unconcealed, on the person.

[Eff. October 1, 2025] (Auth: HRS §§ 134-2, 134-3, 134-4, 134-7, 134-9, 134-13, 134-
18 and 846-2.7; HI Charter §7-2-4(c)) (Imp: HRS §§ 134-2, 134-3, 134-4,134-7, 134-9,
134-13, 134-18 and 846-2.7).

## §1-1-4  Registering firearms brought in from out of state.

    Pursuant to HRS Section 134-3, every person arriving in the State who brings a
firearm of any description, whether usable or unusable, serviceable or unserviceable,
modern or antique, shall register the firearm with the Firearms Section as follows:

(a)   Within the period of time required by HRS Section 134-3 after arrival of the
person or of the firearm, whichever arrives later, the person shall complete the

registration in person with the Firearms Section and present the firearm to the Hawaiʻi Police Department for inspection.

(b)    The person shall submit documentation and fees as required by section 1-1-3 of these Rules, or as otherwise provided by state law.  The person shall be fingerprinted and photographed by Firearms Section personnel as needed.  The person shall list their place of business, residence, or sojourn.

(c)    Firearms Section staff shall conduct a background check of the applicant in accordance with HRS Sections 134-3 and 134-7, to ensure the applicant is lawfully permitted to possess a firearm.

(d)    If the applicant is disqualified from possessing a firearm, the applicant shall surrender all firearms in accordance with HRS Section 134-7.3.

[Eff. October 1, 2025](Auth: HRS §§ 134-2, 134-3, 134-7 and 134-7.3; HI Charter §7-2-4(c)) (Imp: HRS §§ 134-2, 134-3, 134-7 and 134-7.3).

## Subchapter 2
## Applications for License to Carry Firearms, Concealed or Unconcealed

### §1-2-1  Qualifications, training, and testing to carry and use firearms in a safe manner.

(a)    No person who is ineligible for a permit shall be issued a License.

(b)    No person shall be issued a License unless the person has completed a firearms training or safety course that satisfies the requirements of HRS Sections 134-2(g)(2), (g)(3), or (g)(4).

(c)    In addition to the requirements of subsection (b), every applicant for a License shall successfully complete a firearms certification program as required by HRS Section 134-9(e).  Every applicant shall complete the in-person instruction and written examination at least once within the four years preceding the date of the application and shall submit a certification that complies with section 1-3-2 of these Rules.  Every applicant shall complete an applicable shooting proficiency test as set forth in subsection (d) at least once within the ninety days preceding the date of the application.  The lecture session shall include an interactive question and answer session on all topics required by HRS Section 134-9(e).  The lecture session shall be a minimum of four hours, provided that an applicant may take one combined course, with a minimum of four hours of instruction, to satisfy the requirements of this subsection and subsection (b), so long as the combined course covers all topics required by law.

(d)    The shooting proficiency test shall use a National Rifle Association certified target, and every applicant shall be proficient in the handling and use of the firearms involved as detailed in the Hawaiʻi Police Department's "SUPPLEMENT TO APPLICATION FOR LICENSE TO CARRY FIREARM CONCEALED/UNCONCEALED", which can be found on the Hawaiʻi Police Department's website.

(e)    The firearms certification program shall be led by an instructor verified by the Hawaiʻi Police Department.

(f)     Every applicant for a License shall satisfy and remain in compliance with the
        requirements of section 1-1-3 of these Rules.  In addition, in determining
        whether the applicant "presents or would present a danger to the community as
        a result of carrying a firearm in public" pursuant to HRS Section 134-9(h)(3), the
        Chief shall consider the totality of the circumstances, including the following
        objective factors:
        (1)     Whether the applicant has been involved in any incidents of alleged
                domestic violence within the ten years preceding the application;
        (2)     Whether the applicant has been involved in any incidents of careless
                handling, storage, or carrying of a firearm within the ten years preceding
                the application;
        (3)     Whether the applicant has been involved in incidents of abuse of alcohol,
                intoxicating liquor, or controlled substances, including but not limited to
                operating a vehicle under the influence of an intoxicant, within the ten
                years preceding the application;
        (4)     Whether the applicant has been involved in a crime of violence within the
                ten years preceding the application;
        (5)     Any other specific and articulable indicia that would indicate to a
                reasonable observer, when considering relevant objective factors, that the
                applicant presents or would present a danger to the community as a
                result of carrying a firearm in public; and
        (6)     Any other factors provided by law, giving more weight to incidents that
                are serious or recent, and less weight to incidents that are minor or
                occurred in the distant past.  For purposes of this section, "involved in"
                generally requires a conviction or other court ruling; however, the Chief
                may also consider evidence that the applicant has been repeatedly
                arrested for or otherwise repeatedly implicated in dangerous or violent
                conduct that would lead a reasonable, objective observer to conclude that
                the person presents or would present a danger to the community as a
                result of carrying a firearm in public.  The Records and Identification
                Division may adopt a Manual of Procedure to provide additional objective
                guidelines in implementing this section.  The Chief may consider
                information provided as part of the application, as well as any other
                information available to the Hawai'i Police Department or the general
                public, in making these determinations.

The Chief shall issue a License to an applicant who meets all relevant qualifications unless the Hawaiʻi Police Department possesses specific and articulable information demonstrating that the applicant is not entitled to possess a firearm or that the applicant presents or would present a danger to the community as a result of carrying a firearm in public or is otherwise prohibited from ownership or possession of a firearm.

[Eff. October 1, 2025] (Auth: HRS §§ 134-2, 134-7 and 134-9; HI Charter §7-2-4(c)) (Imp: HRS §§ 134-2, 134-7 and 134-9).

### §1-2-2  Application procedures for License to Carry Firearms, concealed or unconcealed.

Every applicant shall have a mailing address in Hawaiʻi other than a Post Office box and shall submit:

(a)     The completed Hawaiʻi Police Department Application for License to Carry Concealed Firearms or License to Carry Unconcealed Firearms, including an affidavit as required by HRS Section 134-9(d)(5),  and any and all forms designated by the Hawaiʻi Police Department to implement HRS Sections 134-2, 134-7, and 134-9.

(b)     A copy of the State of Hawaiʻi Firearms Registration, registered in the applicant's name, for each pistol or revolver to be carried by the applicant if the applicant receives a License.

(c)     All forms and documents required by the Hawaiʻi Police Department, including all documentation required by section 1-1-3 of these Rules.

(d)     Valid government-issued photo identification to establish the applicant's identity and to satisfy the requirements of HRS Sections 134-9(a)(4) and 134-9(a)(6), along with reliable documentation such as utility bills, or rental agreements to show that the applicant currently lives in the State of Hawaiʻi, to satisfy the requirements of HRS Section 134-9(a)(5).

(e)     Documentation, in compliance with section 1-3-2, that the applicant has completed a firearms training or safety course that satisfies the requirements of HRS Sections 134-2(g)(2), (g)(3), or (g)(4).

(f)     Documentation, in compliance with section 1-3-2, that the applicant has completed the lecture and written examination requirements of section 1-2-1(c) within the four years preceding the date of the application.

(g)     Documentation, in compliance with section 1-3-2, that the applicant has completed and passed an applicable shooting proficiency test required by section 1-2-1(d) for each firearm to be carried, including the make, serial number, and caliber of the firearm to be carried, within the ninety days preceding the date of the application.

(h)     Two (2) United States passport-sized, front-facing color photographs of the applicant taken within thirty (30) days prior to submittal of the application.

(i)     A non-refundable fee of $150.00, or, if applicable, the maximum amount permitted by state law for the License and any background check or other processing fees.  An applicant may request a waiver of some, or all of this fee

based on financial hardship. The applicant has the burden to demonstrate financial hardship and shall provide documents to support the request. The applicant shall also provide any documents reasonably requested by the Hawai'i Police Department to verify the request. An applicant's receipt of government assistance provided to individuals or families at or below 200% of the federal poverty level, such as SNAP or TANF, shall be prima facie evidence of financial hardship.

(j) Any other forms prescribed by the Department of the Attorney General or the Hawai'i Police Department required to complete the background check and mental health screening required by law.

[Eff. October 1, 2025] (Auth: HRS §§ 134-2, 134-7 and 134-9; HI Charter §7-2-4(c)) (Imp: HRS § 134-9).

### §1-2-3  Detectives, private detectives, investigators, guards, detective agencies, and guard agencies.

(a) Any Detective Agency or Guard Agency with an active license issued pursuant to HRS Chapter 463, which requests a License to Carry Firearms for any of its on-duty personnel, or any Detective, Private Detective, Investigator, or Guard with an active license issued pursuant to HRS Chapter 463, who requests a License to Carry Firearms for on-duty use, shall submit a written request with justification to the Chief of Police.  Such justifications shall include:
    (1)    Nature of the security work to be undertaken.
    (2)    Necessity for each applicant to carry a firearm.
    (3)    Anticipated dates, times, and locations where applicants will carry the firearms.
    (4)    Address of the principal place of business of the Detective Agency or Guard Agency, or principal place of business of the Detective, Private Detective, Investigator, or Guard, where the firearms will be stored.
    (5)    Name, address, date of birth, physical description, social security number, and previous employment of each applicant for whom a License to Carry Firearms is requested.
    (6)    Proof of licensure as a Detective Agency or Guard Agency, or proof of licensure as a Detective, Private Detective, Investigator, or Guard, if requesting the License for oneself.  The applicant shall submit documentation demonstrating compliance with all state-law licensing and bonding requirements.

(b) Each individual applicant to be licensed shall complete the training and testing required by section 1-2-1 and submit all documents required by section 1-2-2, in addition to the following:
    (1)    A valid permit to acquire the ownership of a firearm issued by county police pursuant to HRS Section 134-2, and shall satisfy the requirements of HRS Section 134-2(g);
    (2)    A valid license pursuant to HRS Sections 463-6 or 463-7; and

(c)     Upon receipt of the above information at the Firearms Section, a check by the
        Records and Identification Division and other relevant agencies shall be
        conducted of each applicant.
(d)     The Chief of Police may limit the number of employees who are licensed to carry
        a firearm for each Detective Agency or Guard Agency applying for such licenses.
        Such determination shall be based on strict necessity as determined by the Chief
        of Police.
(e)     Pursuant to section 16-97-17, Hawaiʻi Administrative Rules, no individual may
        carry a firearm while on-duty and engaged in the business of being a Detective,
        Private Detective, Investigator, or Guard, except with a License granted pursuant
        to this section.  Any individual without a License issued pursuant to this section
        who carries a firearm while on-duty and engaged in the business of being a
        Detective, Private Detective, Investigator, or Guard shall be investigated and
        referred for prosecution pursuant to HRS Section 463-15, and any other
        applicable law.
(f)     An authorized representative of the Detective Agency or Guard Agency shall
        certify that the agency and all employees shall comply with all the requirements
        of HRS Chapters 134 and 463, and these rules.  If an agency's employee fails to
        comply with the requirements of HRS Chapters 134 or 463, or these rules, the
        Chief may revoke the Licenses for other agency employees that were issued
        pursuant to this section; provided that such a revocation shall not require a one-
        year waiting period, as set forth in section 1-2-8 of these Rules, before an
        otherwise compliant employee may apply for a new License with a different
        agency or on the employee's own behalf.  For a reasonable period of time not to
        exceed one year following the revocation of a License of any agency employee to
        carry while on duty, the Chief may also deny new applications submitted by the
        agency's employees seeking to carry while on duty.  The Chief shall make such
        decisions objectively, based upon the severity of the offense and the offender's
        history of compliance or noncompliance with the requirements of HRS Chapters
        134 or 463, and these Rules.
(g)     Licenses issued pursuant to this section may be Unconcealed, Concealed, or
        both.  The Chief shall evaluate the applicant's needs and, in the Chief's
        discretion, issue the type of License that will best promote public safety.
[Eff. October 1, 2025] (Auth: HAR § 16-97-17, HRS §§ 134-2, 134-9, and 463-10.5; HI
Charter §7-2-4(c)) (Imp: HAR § 16-97-17, HRS §§ 134-2, 134-9, 463-6, 463-7 and 463-
10.5).

### §1-2-4  Initial review of application by Firearms Section; background checks.

(a)     An application is not deemed received by the Hawaiʻi Police Department until the
        complete application, including all required forms and information, is received by
        the Hawaiʻi Police Department.  The Firearms Section shall not take further
        action on an incomplete application except as set forth in subsection (b).
        Incomplete applications shall be deemed to have been denied on the one

hundred twentieth day following submission by the applicant, measured from the date of the latest submission by the applicant.

(b)  Firearms Section personnel shall review the application for completeness.  If an application is incomplete, Firearms Section personnel shall advise the applicant in writing as to what information or items are missing or are incomplete,

(c)  If the Firearms Section deems the application to be complete, the Hawaiʻi Police Department shall conduct the following background checks on the applicant, including but not limited to:

    (1)  Local police involvements (current and archive records management systems).

    (2)  State of Hawaiʻi – Electronic Bench Warrant (EBW) search.

    (3)  CJIS Hawaiʻi query – for Hawaiʻi arrest history and disposition information.

    (4)  National Instant Criminal Background Check System (NICS) which includes:

        (A)  National Crime Information Center (NCIC) warrants.

        (B)  Interstate Identification Index (III) – a national index of criminal histories.

        (C)  NICS index – index of persons not eligible to receive firearms in the U.S.

        (D)  Immigration and Customs Enforcement databases – regarding whether the applicant is a citizen, a national, or a lawful permanent resident of the United States.

        (E)  A query of the State of Hawaiʻi Adult Mental Health Divisions files for State of Hawaiʻi mental health records.

        (F)  A query of Hawaiʻi's medical marijuana cardholder database to discern whether the applicant holds a medical marijuana permit (see U.S. Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives, "Open letter to all federal firearms licensees," Sept. 21, 2011).

        (G)  JIMS, eCourt Kokua, Hoʻohiki, or other comparable Hawaiʻi Judiciary databases, for State court orders and records.

        (H)  Any other databases required by law.

    (5)  Review of records provided pursuant to section 1-1-3 of these Rules.

    (6)  In accordance with HRS Section 134-9(h), a review of all objective factors set forth in section 1-2-1(f) of these Rules.

    (7)  Any other available agency with information.

(d)  More than one person may receive a License to carry a single firearm – such as when spouses share a firearm – provided that each person shall have a License for each firearm to be carried.

(e)  Unless the application materials demonstrate, clearly and on their face, that an applicant cannot meet the eligibility criteria set forth in these regulations, each applicant shall be entitled to an interview with Firearms Section personnel to present any additional information.  Upon request by the applicant, Firearms Section personnel shall conduct the interview by telephone or by

11

videoconference, as chosen by the applicant; alternatively, Firearms Section personnel may conduct the interview in person upon the request of the applicant and at the discretion of Firearms Section personnel.

(f)     The Department has discretion to forgo one or more portions of a background check if the Department conducted a full background check of the applicant within the preceding thirty days.

[Eff. October 1, 2025] (Auth: HRS § 134-2, 134-3, 134-9, 134-18 and 846-2.7; HI Charter §7-2-4(c)) (Imp: HRS §§ 134-7 and 134-9).

## §1-2-5 Standards for issuance of License to Carry Unconcealed Firearms.

The Chief shall determine whether, in addition to the requirements for a Concealed License, an applicant for an Unconcealed License has, in the Chief's discretion, satisfied the requirements set forth in HRS Section 134-9(b).  For applications that satisfy the objective criteria of HRS Section 134-9(b) and these rules, the Chief shall be guided by the following standards:

(a)     Pursuant to HRS Section 134-9(b), the applicant "sufficiently establishes" that the applicant has an "urgency" or "need" to carry a firearm and is "engaged in the protection of life and property."

    (1)     Being "engaged in the protection of life and property" does not require an applicant to be employed in a job that entails the protection of life or property, such as a Guard, but it does require the applicant to be taking part, generally, in the protection of life, property, or both.

    (2)     The life or property being protected is not limited to the applicant's life or property but can extend to that of others.

(b)     The Chief may consider the following non-exhaustive list of factors when determining whether an applicant has an "urgency" or "need" to carry a firearm and is "engaged in the protection of life and property":

    (1)     Whether the applicant has been subjected to a credible threat of harm to life, property, or both.

    (2)     Whether there has been corroboration of the threat, from police, government, or other records; from prior history with the same person or at the same location; or from witnesses, documents, or other first-hand sources.

    (3)     Whether the applicant has been the victim of crime, such as domestic abuse, in which the applicant was specifically targeted, as opposed to the applicant being the victim of random crime.

    (4)     Whether temporary restraining orders, protective orders, or other court orders or proceedings demonstrate a risk of harm to life or property.

    (5)     Whether the applicant's profession supports the need for a firearm due to the heightened risk of attack or violence that the applicant faces.

    (6)     Whether the applicant lives or works in a rural area far from police protection, as opposed to living or working in an urban area with a significant police presence.

(7)     Whether the applicant is employed in a job that requires protection of the life or property of others.

(8)     Whether a spouse, close family member, or other dependent of the applicant faces a heightened risk of bodily harm and the applicant is engaged in the protection of that person.

(9)     Whether the applicant has an "urgency" or "need" to carry a firearm unconcealed rather than concealed, taking into account considerations such as whether an Unconcealed License will enable the applicant to protect life or property more effectively than a Concealed License, and whether the intended use of the Unconcealed License is likely to cause terror and panic among the general public.

(10)    Other factors not mentioned above but reasonable and appropriate to the decision whether to grant or deny an application for an Unconcealed License.

[Eff. October 1, 2025] (Auth: HRS §§ 134-9 and 463-7; HI Charter §7-2-4(c)) (Imp: HRS §§ 134-9 and 463-7).

### §1-2-6 Chief's Decision on application for License to Carry Firearms, Concealed or Unconcealed.

(a)     The Firearms Section shall forward the applicant's background check results, application, all attachments, and a cover memo noting all findings to the Chief for the Chief's review and decision.

(b)     For applications for Concealed Licenses, the Chief shall evaluate whether the applicant meets the objective criteria as required under Hawai'i law and as set forth herein.  The Chief shall consider prohibitions and standards found in HRS Sections 134-2, 134-7, and 134-9.  If the applicant does not satisfy these criteria, the application shall be denied on that basis.

(c)     For applications for Unconcealed Licenses, the Chief shall evaluate whether the applicant meets the objective criteria as required under Hawai'i law and as set forth herein, and whether the applicant has met the criteria for an Unconcealed License as set forth in HRS Section 134-9(b), and section 1-2-5 of these Rules.

(d)     The Chief and Hawai'i Police Department personnel shall consider each application based on the facts and circumstances of each applicant.  The Chief and Hawai'i Police Department personnel shall not act arbitrarily or capriciously and shall not reject applications based merely on preconceived notions or beliefs.  All decisions to grant or deny applications shall be based on an objective application of the defined criteria set forth herein.

(e)     If, at any time during the Chief's processing of an application, the Chief feels that the applicant may be able to meet the eligibility criteria, but further information or clarification is needed before the Chief is able to make a final decision, Firearms Section personnel shall invite the applicant to submit additional information.

(f)     Upon the Chief reaching a decision, the applicant shall be sent a written decision.

13

(1)   If an application for a Concealed License is granted, the Chief shall not impose any special conditions and shall issue the license card in a timely manner.

(2)   If an application for an Unconcealed License is granted, the Chief shall issue the license card in a timely manner and shall indicate whether any special conditions are attached to an Unconcealed License and shall explain the reasons for any such conditions.  The Chief may grant an Unconcealed License without special conditions, and shall not impose unreasonable restrictions.  The Chief may:

    (A)   Limit the hours during which the firearm may be carried unconcealed;

    (B)   Limit the locations where the firearm may be carried unconcealed;

    (C)   Limit the purpose for which the firearm may be carried unconcealed;

    (D)   Limit the number of rounds of ammunition that may be carried; or

    (E)   Impose any other reasonable conditions.

(g)   If an application for a License is denied, the denial letter shall set forth the facts of the application and explain the reasons for the denial based on HRS Sections 134-2, 134-7, or 134-9, the standards and factors described in these rules, or any other source of applicable law.

[Eff. October 1, 2025] (Auth: HRS §§ 134-2, 134-7, 134-9 and 463-7; HI Charter §7-2-4(c)) (Imp: HRS §§ 134-2, 134-7 and 134-9).

### §1-2-7  License card; expiration; renewal; lost or stolen cards.

(a)   If the application for License to Carry Firearms is granted, Hawai'i Police Department personnel shall issue a licensee card that includes at a minimum, the licensee's name, photograph, make and caliber of the firearm, firearm serial number, and expiration date.

(b)   The licensee shall have the card and government-issued photo identification in the licensee's immediate possession when carrying the firearm in public.

(c)   Unless renewed, every License shall expire, and shall become invalid, at the expiration of the License period as set forth in HRS Section 134-9 from the date of issue.

(d)   To renew any License, a licensee shall complete all requirements for the License as set forth in section 1-2-2 and, if applicable, section 1-2-3, except that the non-refundable fee shall be $50.00, or, if applicable, the maximum amount permitted by state law.  The licensee may request a waiver of some or all of the fee in accordance with section 1-2-2(i).  To avoid a gap in licensure, the licensee should submit the application no earlier than ninety days, and no later than sixty days, prior to the expiration of the License.  A License shall expire within the period of time prescribed by HRS Section 134-9 from the date of issue regardless of the existence of a pending application.

(e)   If the licensee's License is renewed, the licensee shall be issued a new card. After receiving notice that the renewal application has been approved, the

licensee shall take possession of the new License Card and shall surrender the previous License Card. Issuance of the new License shall be effective upon approval of the renewal application.

(f)     An application for a License by a licensee shall be treated as a renewal if received by the Hawaiʻi Police Department prior to the expiration of the licensee's existing License. An application for a License received by the Hawaiʻi Police Department after the expiration of the licensee's previous License shall be treated as a new application, and the applicant shall meet all requirements and pay all fees for a new License. An applicant whose License has expired is not authorized to carry a firearm regardless of the existence of a pending application for a License.

(g)     Licensees shall file a police report for a lost or stolen card with the Hawaiʻi Police Department within twenty-four hours of the loss or theft. The licensee shall complete an Application for Replacement License form and shall pay a non-refundable fee as permitted by state law to issue a new card. A replacement card shall only be valid for the remaining term of the existing License.

(h)     If at any time while the licensee has a valid License under these Rules and the licensee has a legal name change, the licensee shall complete an Application for Replacement License form within thirty (30) days of the legal name change and shall provide valid proof of the name change.

(i)     Licenses cannot be transferred to any other person, and a License shall be surrendered to the Firearms Section if the firearm is sold or transferred prior to the expiration of the License.

(j)     Licenses cannot be used to carry any firearm other than the firearm or firearms for which a License is granted.

[Eff. October 1, 2025] (Auth: HRS §§ 134-4, 134-9, and 134-9.2; HI Charter §7-2-4(c)) (Imp: HRS §§ 134-7, 134-9 and 134-9.2).

## §1-2-8  Impounding, Voiding and Revoking Permits, Licenses, and Instructor Verifications.

(a)     Permits shall be impounded pursuant to HRS Section 134-2(e), and any other applicable law. Permits shall be revoked pursuant to HRS Section 134-13, if the permittee no longer meets the criteria set forth in section 1-1-3 of these Rules, or is otherwise prohibited from possessing firearms.

(b)     A License shall be immediately void – meaning that the license is automatically deemed invalid, without any action required by the Hawaiʻi Police Department or other agency – if the licensee becomes disqualified from the ownership, possession, or control of a firearm pursuant to HRS Section 134-9(n). A licensee whose License has been voided may appeal pursuant to section 1-2-9 to request that the License be reinstated, provided that the License shall be void until and unless reinstated by the Chief or a court.

(c)     The following shall result in revocation of all of a licensee's Concealed Licenses pursuant to HRS Section 134-13, meaning that the licensee shall receive notice

15

and an opportunity to be heard as set forth in HRS Section 134-13, and section 1-2-9 of these Rules:

   (1)   Conviction of the licensee for a violation of HRS Sections 134-9.2, 134-9.3, 134-9.4, or 134-9.7.

   (2)   Where the licensee has been found carrying a firearm other than a firearm for which the licensee holds a License.

   (3)   Where the licensee has been found carrying more than one firearm at a time, regardless of whether the licensee holds Licenses for the firearms.

   (4)   A physical or psychological impairment that prevents the licensee from safely carrying a firearm in public.

   (5)   Where the licensee has been found carrying a firearm while on-duty and engaged in the business of being a Detective, Private Detective, Investigator, or Guard, without a License issued pursuant to section 1-2-3 of these Rules.

   (6)   Where the License was based upon the licensee's employment, and the licensee has separated from such employment.

   (7)   Where the License was based upon the licensee's status as a Detective, Private Detective, Investigator or Guard pursuant to HRS Sections 463-5 and 463-7, and the licensee's license to serve as such has been revoked.

   (8)   Where the Chief of Police has specific and articulable information that the licensee no longer meets the objective criteria for a permit or License set forth in HRS Sections 134-7 and 134-9, and these rules. For permits, this includes the occurrence of any event which, had it occurred prior to issuance of the permit, would have resulted in the denial of the application for a permit. For Licenses, this includes the occurrence of any event which, had it occurred prior to the issuance of the License, would have resulted in the denial of the application for a License.

   (9)   Except as provided by subsection (b), any event or circumstance that prohibits the licensee from possessing firearms.

(d)   The following shall result in revocation of a License to Carry Unconcealed Firearms:

   (1)   Any circumstance in which a Concealed License would be revoked, except that the licensee may carry a firearm that is not concealed.

   (2)   Where the Chief of Police determines that the licensee no longer meets the requirements of HRS Section 134-9, or section 1-2-5 of these Rules.

(e)   The revocation of the License shall be for the remaining term of the present License or until reinstated by the Chief.

(f)   If a License is void, the licensee shall surrender the License to any Hawai'i Police Department officer within forty-eight hours. If a License is subject to revocation, the licensee shall be provided notice and an opportunity to be heard in accordance with HRS Section 134-13, and section 1-2-9 of these Rules. A licensee whose License has been revoked shall surrender the License to any Hawai'i Police Department officer within forty-eight hours.

16

(g)     A licensee whose License is revoked shall be ineligible to apply for another
        License, concealed or unconcealed, for one year following the date of revocation,
        if the revocation occurred pursuant to section 1-2-8 (c)(1), (c)(2), (c)(3), or
        (c)(5).
(h)     Revocation of Instructor Verification.
        (1)     The following shall result in revocation of an instructor's verification to
                administer a firearm certification program:
                (A)     Any event or circumstance that, by law, requires the instructor to
                        surrender any firearms.
                (B)     Any event or circumstance which, had it occurred prior to
                        verification, would have resulted in the denial of the application for
                        verification.
        (2)     If the instructor possesses a License, revocation of that License.
        (3)     The Hawai'i Police Department shall provide the same thirty-day notice
                and opportunity to be heard when revoking an instructor verification as
                when revoking a License pursuant to HRS Section 134-13, and section 1-
                2-9 of these Rules.
        (4)     The revocation of the verification shall be for the remaining term of the
                verification or until reinstated by the Chief.
        (5)     An instructor whose verification is revoked shall be ineligible to apply for
                another verification for one year following the date of revocation, provided
                that if the revocation of certification is based on the revocation of the
                instructor's License, this one-year ineligibility applies only if the License
                revocation occurred pursuant to section 1-2-8 (c)(1), (c)(2), (c)(3), or
                (c)(5).

[Eff. October 1, 2025] (Auth: HRS §§ 91-9, 134-2, 134-7, 134-9, 134-9.2, 134-9.3, 134-
9.4, 134-9.7, 134-13, 463-5 and 463-7; HI Charter §7-2-4(c)) (Imp: HRS §§ 91-9, 134-
2, 134-7, 134-9 and 134-13).

## §1-2-9  Appeal procedures.

(a)     In accordance with HRS Section 134-13,  and section 1-2-8 of these Rules, if an
        applicant for a permit, License, or instructor verification objects to a denial,
        revocation, voiding of a permit, License, or instructor verification, the applicant,
        permittee, licensee, or instructor may request a hearing.  A Detective Agency or
        Guard Agency may request a hearing on behalf of its employees.
(b)     Hearings shall be held in accordance with Rule 2, provided that the applicant,
        permittee, licensee, or instructor shall request the hearing in writing no later
        than thirty days after the date of the notice of denial, revocation, or voiding.
        The request shall be deemed untimely, and no action will be taken thereon,
        unless the request is received by the Hawai'i Police Department at 349 Kapiolani
        Street, Hilo, Hawai'i, 96720, no later than the thirtieth day after the date of the
        decision letter.  In the event the thirtieth day falls on a weekend or holiday, the
        deadline shall be the close of business on the next business day.

(c)    The hearing shall constitute a contested case hearing for purposes of HRS
       Section 91-14, and the applicant, permittee, licensee, instructor, or Agency shall
       be entitled to judicial review under that section.

[Eff. October 1, 2025] (Auth: HRS §§ 91-9, 91-14, 134-2, 134-9 and 134-13; HI Charter
§7-2-4(c)) (Imp: HRS §§ 91-9, 91-9.5, 91-10, 91-12, 91-14, 134-2, 134-9, 134-13, and
463-4).

## Subchapter 3
## Instructor verifications and training certifications

### §1-3-1  Instructor verifications.
(a)    Each firearm certification program for permits and each firearm certification
       program for Licenses shall be led by an instructor verified by the Hawaiʻi Police
       Department. An application for verification as an instructor shall be rejected if the
       applicant is legally prohibited from possessing or handling firearms.
(b)    An applicant may be verified to conduct training for permits to Acquire, and may
       also be verified to conduct trainings for Licenses to Carry, but an applicant shall
       demonstrate the required qualifications for each before being so verified.
       Verification as an instructor for Permits to Acquire alone does not authorize the
       applicant to conduct trainings for Licenses to Carry, and verification as an
       instructor for Licenses to Carry alone does not authorize the applicant to conduct
       trainings for Permits to Acquire.
(c)    Absent a verification process formalized by the State of Hawaiʻi, the Hawaiʻi
       Police Department may develop clear and objective criteria to verify qualifications
       of applicants to become instructors, with verification to be valid for two years.
       Such clear and objective criteria shall require the applicant to provide evidence of
       the following:
       (1)    Valid, certifications by a nongovernmental organization approved for such
              purposes by the Chief of Police or designee, or certification as a military
              firearms instructor.
       (2)    The applicant's ability to provide reliable certifications regarding trainees'
              qualifications to the Hawaiʻi Police Department.  A firearms instructor shall
              be disqualified if the applicant was previously convicted of any criminal
              offense involving dishonesty or fraud, or if the applicant was previously
              found liable in any civil court for any act involving dishonesty or fraud.
       (3)    For applicants seeking verification to provide training for Permits to
              Acquire, the applicant shall have the required qualifications to teach
              others regarding mental health, suicide prevention, and domestic violence
              issues associated with firearms and firearm violence.  The applicant shall
              satisfy at least one of the following:
              (A)    If the applicant intends to conduct one or more portions of the
                     training, the applicant shall submit evidence of the applicant's
                     education and experience in each field.

18

      (B)    If a physician, psychologist, social worker, or other health care professional licensed in Hawaiʻi and with training and experience in these issues intends to conduct one or more portions of the training, the applicant shall provide the name, contact information, and qualifications of the person conducting each of these portions.

      (C)    If the applicant intends to use videos for one or more portions of the training, the applicant shall submit information on each video to be used. The use of supplemental instructional materials, including but not limited to flyers, pamphlets, handouts, and other written materials, is also permitted. Such materials may be used in conjunction with the video, or in lieu of a video, provided that the applicant submits copies of the materials or a detailed description of their content for review and approval.

   (4)    For applicants seeking verification to provide training for Licenses to Carry, the applicant shall submit evidence of their qualification to teach others regarding the law in Hawaiʻi on self-defense and use of force, including the requirements of HRS Chapters 134 and 703. The applicant shall also provide a copy of the written examination to be used which covers all subjects required under HRS Section 134-9(e).

(d)    As used in this section and in section 1-3-2 of these Rules, "applicant" means the person seeking to be verified as an instructor, "instructor" means verified instructor, and "trainee" means the person seeking training to obtain a Permit to Acquire or a License to Carry.

[Eff. October 1, 2025] (Auth: HRS §§ 134-2, 134-7 and 134-9; HI Charter §7-2-4(c)) (Imp: HRS §§ 134-2, 134-7 and 134-9).


## §1-3-2  Training certifications by verified instructors.

     Any certification of training provided by a verified instructor shall be in the form of a notarized affidavit, attesting to the following:

(a)    The legal name of the trainee;

(b)    The instructor's name and contact information;

(c)    The names and contact information of all individuals who conducted portions of the training as set forth in sections 1-3-1(c)(3) and (c)(4) of these Rules;

(d)    The date, starting time, ending time, and location where the trainee completed classroom instruction;

(e)    The date, starting time, ending time, and location where the trainee completed firing training; and

(f)    For trainees seeking a License to Carry, the trainee's scores on the written examination and shooting proficiency test, as well as the make, serial number, and caliber of the firearm used for the shooting proficiency test.

[Eff. October 1, 2025] (Auth: HRS §§ 134-2 and 134-9; HI Charter §7-2-4(c)) (Imp: HRS §§ 134-2 and 134-9).

## Subchapter 4
## General Provisions

### §1-4-1  Purpose and intent; severability.

(a)     These rules are intended to govern the processing of applications for Permits to Acquire, to Register a Firearm, and for Licenses to Carry Firearm, concealed or unconcealed, by the Hawaiʻi Police Department, and shall be complied with by Hawaiʻi Police Department personnel, including the Chief of Police.

(b)     Every provision in these rules and every application of the provisions in these rules, including all subchapters, is severable from each other as a matter of law. If any provision of these rules or the application thereof to any person or circumstance is held invalid, such invalidity shall not affect other provisions or applications of these rules, which can be given effect without the invalid provision or application.  These rules shall be construed to be enforceable up to, but no further than, the maximum possible extent consistent with federal and state law.

(c)     Where these rules repeat the requirements of state law, the Hawaiʻi Police Department is not adopting those requirements as its own policy.  Instead, the Hawaiʻi Police Department is including those requirements solely for ease of reference for its officers and applicants."

[Eff. October 1, 2025] (Auth: HRS Chapter 91, §§ 134-2 and 134-9; HI Charter §7-2-4(c)) (Imp: HRS §§ 134-2 and 134-9).

*-end of rule-*

CERTIFICATION

I, Reed Mahuna, Interim Chief of the Hawaiʻi Police Department of the County of Hawaiʻi, State of Hawaiʻi, do hereby certify:

1. That the foregoing is a full, true and correct copy of Rule 1 Firearms Permits and Licenses, which were adopted on October 1, 2025, after a public hearing was held in Hilo on August 14, 2025, and in Kona on August 11, 2025, this Rule was adopted immediately following the repeal of the Rules and Regulations of the Hawaiʻi Police Department Governing the Issuance of Licenses to Carry Concealed and Unconcealed Weapons previously adopted on October 29, 1997.
2. That notice of the public hearing on the foregoing rule, which included a statement of the substance of the proposed rule, was published in both the Hawaiʻi Tribune-Herald and the West Hawaiʻi Today on July 9, 2025.
3. The Department believes that the amendments have no adverse effect to any identified Native Hawaiian traditional and customary practices.  Furthermore, if there are any adverse effects to any identified Native Hawaiian traditional and customary practices such effects are minimal and, when balanced with the County of Hawaiʻi's regulatory right, is overwhelmingly outweighed by the County of Hawaiʻi's interest in regulating the safety of all parties and animals on property in the control of the County of Hawaiʻi.
4. Pursuant to Hawaiʻi Revised Statutes Section 201M-2(d), proposed Rule 1 Firearms Permits and Licenses is being adopted to implement a statute that does not require an agency to interpret or describe the requirements of the statute. Nevertheless, the Hawaiʻi Police Department met with all small businesses that could perceivably be affected by these proposed rules on May 19, 2025, to involve them in the development of the proposed rules.

Dated this 18th day of September, 2025.

REED MAHUNA, Interim Chief of Police
Hawaiʻi Police Department
County of Hawaiʻi

APPROVED:


C. KIMO ALAMEDA, Ph.D.
Mayor
County of Hawai'i


APPROVED AS TO FORM AND LEGALITY:


Dakota Frenz
Deputy Corporation Counsel
County of Hawai'i


I hereby certify that the foregoing rules were received and filed in the Office of the
County Clerk this ___19th___ day of _September_ 2025.


County Clerk
County of Hawai'i

22

## RULE 2. CONTESTED CASES

2-1.  Contested cases; notice; hearing; record.  In any contested case under these rules, all parties shall be afforded an opportunity for a hearing, consistent with the provisions of Sections 91-9 through 91-15, Hawaiʻi Revised Statutes, as amended.

- a.    All parties shall be afforded an opportunity for hearing after reasonable notice.
- b.    Notice shall include a statement of:
  - I)    The date, time, place, and nature of hearing;
  - 2)    The legal authority under which the hearing is to be held;
  - 3)    The particular sections of the statutes and rules involved;
  - 4)    An explicit statement in plain language of the issues involved and the facts alleged by the Chief of Police in support thereof; provided, that if the Chief of Police is unable to state such issues and facts in detail at the time the notice is served, the initial notice may be limited to a statement of the issues involved, and thereafter upon application a bill of particulars shall be furnished;
  - 5)    The fact that any party may retain counsel if he so desires.
- c.    All parties shall be given an opportunity to present evidence and argument on all issues involved.
- d.    Parties may stipulate to a modification or waiver of any procedure in a contested case and informal disposition may be made of a contested case by stipulation, agreed settlement, consent order, or default.
- e.    For the purpose and the decisions of the Chief of Police, the record shall include, when existent:
  - I)    All pleadings, motions, intermediate rulings;
  - 2)    Evidence received or considered, including oral testimony, exhibits and a statement of matters officially noticed;
  - 3)    Offers of proof and rulings thereon;
  - 4)    Proposed findings and exceptions;
  - 5)    Report of the officer who presided at the hearing;
  - 6)    Staff memoranda submitted to the Chief of Police in connection with his consideration of the case.
- f.    The record need not be transcribed unless requested for purposes of rehearing or court review.
- g.    No matters outside the record shall be considered by the Chief of Police in making his decision except as provided herein.

2-2.  Petition for hearing. The petition for hearing of contested case shall be
      filed with the Office of the Chief of Police at 349 Kapiolani Street, Hilo,
      Hawaiʻi 96720. The petition shall be typewritten on 8-1/2" x 11" white
      paper and shall include:
      a.   The name, address and telephone number of the petitioner.
      b.   A statement of the nature of the petitioner's interest, including
           reasons for the submission of the petition.
      c.   A designation of the specific provision, rule or order being contested.
      d.   A complete statement of facts.
      e.   A statement of the position or contention of the petitioner.
      f.   A memorandum of authorities, containing a full discussion of
           the reasons, including any legal authorities, in support of
           such position or contention.

2-3.   Hearing officer. The hearing officer shall be designated by the Chief of
Police and shall comply with the requirements of Sections 91-9 through 91-15,
Hawaiʻi Revised Statutes, and the Rules of the Chief of Police, Hawaiʻi Police
Department, County of Hawaiʻi.

2-4.   Fees. There shall be no fee for filing a petition to contest the denial of a
permit under these rules.

2-5.   Notification of hearing; service.
       a.   All parties shall be given written notice of hearing by registered or
            certified mail with return receipt requested at least twenty (20)
            working days before the hearing. If the parties agree to receive
            written notice of hearing via email, email service shall be
            considered service for purposes of these Rules provided the
            hearing officer verifies receipt of email service by the parties.
       b.   Unless otherwise provided for herein, if service by registered or
            certified mail is not made because of the refusal to accept service
            or the Chief of Police or his agents are unable to ascertain the
            address of the party after reasonable and diligent inquiry, the
            notice of hearing may be given to the party by publication at least
            once in each of two successive weeks in a newspaper of general
            circulation. In no case shall the party be given less than fifteen (15)
            days notice of such hearing.

2-6.   Rules of evidence; participation at hearing.
       a.   The following rules of evidence shall apply in all contested cases:
            I)   Any oral or documentary evidence may be received, but the
                 hearing officer may exclude irrelevant, immaterial, or unduly

repetitious evidence and no sanction shall be imposed or
rule of order be issued except upon consideration of the
whole record or such portions thereof as may be cited by
any party and as consistently supported by reliable,
probative and substantive evidence. All rules or privilege
provided by law are hereby recognized.

2)   Documentary evidence may be received in the form of
copies or excerpts if the original is not available. Parties
shall be given an opportunity to compare the copy with the
original upon request.

3)   Parties shall have a right to cross-examination and a
right to submit rebuttal evidence.

4)   The hearing officer may take notice of judicially recognized
facts and technical or scientific facts which are generally
recognized. Parties shall be notified either before or during
the hearing, or by reference in preliminary reports or
otherwise, of the material so noticed, and shall be afforded
an opportunity to contest the facts so noticed.

5)   Unless otherwise provided herein, the burden of proof rests
with the party initiating the proceeding, including the
burden of producing evidence and the burden of
persuasion. The quantum or degree of proof shall be a
preponderance of the evidence.

6)   A party may present its case to the hearing officer either on
its own behalf or through an authorized representative.

b.   The hearing officer may exclude witnesses in the contested case
from the hearing room during the presentation of evidence.

c.   Whenever in a contested case the final decision makers have not
heard and examined all of the evidence, the decision, if adverse to
a party to the proceeding other than the Chief of Police, shall not
be made until a proposal for decision containing a statement of
reasons and including determination of each legal or factual issue
necessary to the proposed decision has been served upon the
parties, and an opportunity has been afforded to each party
adversely affected to file exceptions and present argument to the
decision makers, who shall personally consider the whole record or
such portions thereof as may be cited by the parties.

2-7.   Decision and orders of hearing officer.  Every decision and order adverse
to a party, rendered by the hearing officer in a contested case, shall be in
writing or stated in the record and shall be accompanied by separate findings of
fact and conclusions of law. If any party to the proceeding has filed proposed

3

findings of fact, the agency shall incorporate in its decision a ruling upon each proposed finding so rendered. Parties to the proceeding shall be notified in writing of the decision and order and accompanying findings and conclusions within thirty (30) days of the conclusion of the hearing.

2-8.    Appeal to the Chief of Police.  Any petitioner aggrieved by the decision of the hearing officer may appeal to the Chief of Police for review. Such review shall be subject to the following:

      a.    The appeal must be in writing on the form provided under Rule 7-2.

      b.    The appeal must be filed with the Office of the Chief of Police within fifteen ( 15) days of the receipt of the decision from the hearing officer.

      c.    The review by the Chief of Police may be based on the record of the hearing officer or upon a rehearing of the evidence. Such review shall be subject to Section 91-13, Hawaiʻi Revised Statutes.

      d.    Upon a rehearing the Chief of Police shall give notice to the affected parties pursuant to the notice requirements of Rule 1.

      e.    The decision of the Chief of Police shall be in accordance with Section 91-12, Hawaiʻi Revised Statutes, and shall be rendered within thirty (30) days of the close of the rehearing or review, but in no case longer than sixty (60) days from the date of the filing by the aggrieved petitioner.

2-9.    Judicial review in contested cases. Any party aggrieved by a final decision and order by the Chief of Police in a contested case, is entitled, by law, to judicial review thereof.  Procedures shall be in accordance with Section 91-14, Hawaiʻi Revised Statutes.

[Eff. October 1, 2025] (Auth: HRS Chapter 91; HI Charter §7-2-4(c)) (Imp: HRS §§ 91-9, 91-9.5, 91-10, 91-11, 91-12, 91-14, 91-15, 134-2, 134-9, 134-13, and 463-4).

*-end of rule-*

CERTIFICATION

I, Reed Mahuna, Interim Chief of the Hawaiʻi Police Department of the County of Hawaiʻi, State of Hawaiʻi, do hereby certify:

1. That the foregoing is a full, true and correct copy of Rule 2 Contested Cases, which were adopted on October 1, 2025, after a public hearing was held in Hilo on August 14, 2025 and in Kona on August 11, 2025.
2. That notice of the public hearing on the foregoing rule, which included a statement of the substance of the proposed rule, was published in both the Hawaiʻi Tribune-Herald and the West Hawaiʻi Today on July 9, 2025.
3. The Hawaiʻi Police Department believes that the amendments have no adverse effect to any identified Native Hawaiian traditional and customary practices. Furthermore, if there are any adverse effects to any identified Native Hawaiian traditional and customary practices such effects are minimal and, when balanced with the County of Hawaiʻi's regulatory right, is overwhelmingly outweighed by the County of Hawaiʻi's interest in regulating the safety of all parties and animals on property in the control of the County of Hawaiʻi.
4. Pursuant to Hawaiʻi Revised Statutes Section 201M-2(d), proposed Rule 2 Contested Cases is being adopted to implement a statute that does not require an agency to interpret or describe the requirements of the statute, thereby the Hawaiʻi Police Department is not required to submit a small business impact statement regarding the proposed rules. Nevertheless, the Hawaiʻi Police Department met with all interested small businesses that may be affected by these proposed rules on May 19, 2025, to involve them in the development of the proposed rules.

Dated this 18ᵗʰ day of September, 2025.

REED MAHUNA, Interim Chief of Police
Hawaiʻi Police Department
County of Hawaiʻi

APPROVED:

C. KIMO ALAMEDA, Ph.D.
Its Mayor
County of Hawaiʻi

5

APPROVED AS TO FORM AND LEGALITY:

DAKOTA FRENZ
Deputy Corporation Counsel
County of Hawaiʻi


I hereby certify that the foregoing rules were received and filed in the Office of the
County Clerk this    19th      day of  September    2025.

County Clerk
County of Hawaiʻi

6