Kevin Gerard O'Grady
Law Office of Kevin O'Grady, LLC
1164 Bishop Street, Suite 1605
Honolulu, Hawaii 96813
(808) 521-3367
Hawaii Bar No. 8817
Kevin@KevinOGradyLaw.Com

Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA  92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JUSTIN ARNOLD, BRYAN GARLAND, JAMES GRELL, ANDREW WHITE,<br><br>Plaintiffs,<br><br>v.<br><br>HAWAII COUNTY,<br><br>Defendant | )<br>)<br>)<br>)<br>) Civil Action No. _____<br>) MEMORANDUM IN SUPPORT<br>) OF MOTION FOR<br>) PRELIMINARY INJUNCTION<br>)<br>)<br>)<br>)<br>)<br>) |

# **Table of Contents**

**I.    Introduction** ....................................................................................1

**II.    Statement of Facts**...........................................................................2

**III.    Standard for Preliminary Injunction** ...........................................4

**IV.    The County is Liable Pursuant to *Monell*** ...................................5

**V.      Plaintiff Has a Strong Likelihood of Success on the Merits** ...................6

**VI.    Plaintiffs' Conduct is Covered by the Second Amendment's Plain Text**..7

**VII.    County's Excessive Delay Violate Procedural Due Process**....................13

**VIII.    County's Policy Violates Substantive Due Process Because it is Ultra Vires**........................................................................................16

**IX.    Plaintiffs Will Suffer Irreparable Harm** ....................................19

**X.      Granting the PI is in the Public Interest and Serves Equity** ..................20

**XI.    Waiver of Bond is Proper and Appropriate Under These Circumstances** ................................................................................21

**XII.    This Court Should Consolidate Pursuant to Rule 65(a)(2)** ....................21

**XIII.    Conclusion** .....................................................................................22

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) ................5

*Baird v. Bonta*, 81 F.4th 1036 (9th Cir. 2023) ......................................... 4, 9, 19, 20

*Beckwith v. Frey*, 766 F. Supp. 3d 123 (D. Me. 2025) ...........................................11

*Brown v. Board of Education*, 347 U.S. 483 (1954). ...............................................12

*Brown v. Board of Education,* 349 U.S. 294 (1955) ...............................................12

*Choda v. County of Hawaii*, 1:21-cv-00384 .............................................................1

*Cine SK8, Inc. v. Town of Henrietta* 507 F.3d 778 (2d Cir. 2007) ........ 13, 16, 17, 18

*Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532 (1985) ...................................13

*Cooper v. Aaron,* 358 U.S. 1 (1958) ........................................................................12

*Day v. County of Hawaii*, 1:23-CV-000576 ..............................................................1

*District of Columbia v. Heller*, 554 U.S. 570, (2008) ..................................... 7, 8, 10

*Donald J. Trump for President, Inc. v. Bullock*, No. CV 20-66-H-DLC, 2020 U.S.
   Dist. LEXIS 169794 (D. Mont. Sep. 16, 2020) ...................................................22

*Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073 (9th Cir. 2014)............................20

*East Bay Sanctuary Covenant v. Trump*, 349 F.Supp.3d 838 (N.D. Cal. 2018) .....21

*Elliott v. Kiesewetter*, 98 F.3d 47 (3d Cir. 1996)....................................................21

*Elrod v. Burns*, 427 U.S. 347 (1976).......................................................................19

*Ezell v. City of Chi.,* 651 F.3d 684 (7th Cir. 2011) ..................................................19

*FDIC v. Mallen*, 486 U.S. 230 (1988)....................................................................15

*Fisher v. Kealoha,* 2012 U.S. Dist. LEXIS 90734, 2012 WL...................................20

*Gillette v. Delmore*, 979 F.2d 1342 (9th Cir. 1992) ...................................................6

*Grell v. County of Hawaii*, 1:23-cv-00328.................................................................1

*Heller v. Doe,* 509 U. S. 312 (1993) .........................................................................17

*Hunter v. County of Sacramento*, 652 F.3d 1225 (9th Cir. 2011) .............................6

*Johnson v. Couturier*, 572 F.3d 1067 (9th Cir. 2009) .............................................21

*Kealoha v County of Hawaii* 1:25-cv-00281-MWJS-RT ...........................................1

*Klein v. City of San Clemente*, 584 F.3d 1196 (9th Cir. 2009) .................................20

*Koons v. Platkin,* No. 22-7464, 2023 WL 3478604, (D.N.J. May 16, 2023)............9

*Kuck v. Danaher*, 600 F.3d 159 (2d Cir. 2010) .......................................... 13, 14, 15

*Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)...............14

*McDonald v. City of Chi.*, 561 U.S. 742 (2010) ................................................ 17, 19

*Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012)..................................................19

*Memorial Hospital v. Maricopa County*, 415 U.S. 250 (1974).............................12

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) .............................................5, 6

*Monterey Mech. Co. v. Wilson*, 125 F.3d 702 (9th Cir. 1997)..................................19

*N.Y. State Rifle & Pistol Ass'n v. Bruen,* 597 U.S. 1, 142 S. Ct. 2111 (2022).... passim

*Nehad v. Browder*, 929 F.3d 1125 (9th Cir. 2019)....................................................6

*Nunez v. City of Los Angeles*, 147 F.3d 867 (9th Cir. 1998) ...................................16

*Ortega v. Grisham*, 148 F.4th 1134 (10th Cir. 2025) .........................................9, 11

*People of the State of Cal. ex rel. Van De Kamp v. Tahoe Regency Planning Agency*, 766 F.2d 1319 (9th Cir. 1985) ..................................................21

*Preminger v. Principi*, 422 F.3d 815 (9th Cir. 2005) ...............................20

*Reno v. Flores*, 507 U.S. 292 (1993)................................................ 16, 17

*Riley's Am. Heritage Farms v. Elsasser,* 32 F.4th 707 (9th Cir. 2022) ...................5

*Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013) ...............................20

*Rogers v. Hacker*, 2023 WL 5529812 (S.D. Ill. Aug. 28, 2023) ...........................12

*Samson v. City of Bainbridge Island*, 683 F.3d 1051 (9th Cir. 2012) .....................17

*Santucci v. City & Cty. of Honolulu*, 2022 U.S. Dist. LEXIS 213030 (D. Haw. Nov. 23, 2022) .........................................................................1, 15

*Trevino v. Gates*, 99 F.3d 911 (9th Cir. 1996)...........................................6

*United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023) ...............................8

*United States v. Verdugo-Urquidez*, 494 U.S. 259, 110 S. Ct. 1056, 108 L. Ed. 2d 222 (1990))...............................................................................8

*Valle del Sol Inc. v. Whiting*, 732 F.3d 1006 (9th Cir. 2013)....................................20

*Weaver v. City of Montebello*, 370 F.Supp.3d 1130 (C.D. Cal. 2109) ...................21

**Statutes**

H.R.S. § 134-2(e) ................................................................1, 18

**Rules**

F.R.C.P. 65(a)(2)...................................................................22

**Treatises**

11A Charles Alan Wright et al., Federal Practice and Procedure § 2948.1 (2d ed. 1995) ..................................................................................................................19

# I.  Introduction

The County of Hawaii has a history of restricting the Second Amendment rights of its residents.[1] It has put in place a series of policies which unconstitutionally restrict the rights of county residents.  At issue here are the excessive wait times taken by the County to process permit to acquire firearms ("PTA").  State law requires "…that a permit shall be issued or the application denied before the fortieth day from the date of application." *See* H.R.S. § 134-2(e).[2] Plaintiffs are Hawaii County residents who are fully qualified to own a firearm and have waited more than forty days to have a permit to acquire be *processed* and wish to purchase additional firearms in the immediate future.  They seek a preliminary injunction compelling the County to process permits to acquire applications in forty days or less.   As Judge Watson has found, "[i]t is in the public interest to have the language of Hawai'i law enforced".[3] As shown below,

---

[1] *See e.g. Choda v. County of Hawaii*, 1:21-cv-00384, *Grell v. County of Hawaii*, 1:23-cv-00328, *Day v. County of Hawaii*, 1:23-CV-000576, *Shiroma v. Hawaii County* 1:25-cv-00181-JAO-WRP, *Thompson v. County of Hawaii*, 1:24-cv-00333; *Kealoha v County of Hawaii* 1:25-cv-00281-MWJS-RT

[2] "Except for sales to dealers licensed under section 134-31, dealers licensed by the United States Department of Justice, law enforcement officers, or where any firearm is registered pursuant to section 134-3(a), no permit shall be issued to an applicant earlier than fourteen calendar days after the date of the application; provided that a permit shall be issued or the application denied before the fortieth day from date of application." *See* H.R.S. § 134-2(e).

[3] *Santucci v. City & Cty. of Honolulu*, 2022 U.S. Dist. LEXIS 213030 (D. Haw. Nov. 23, 2022).

Plaintiffs easily fulfill the standard for a preliminary injunction.  A preliminary injunction should issue.

## II. <u>Statement of Facts</u>

Plaintiffs are four Hawaii County residents who have had their permits to acquire applications take more than forty days to process. Plaintiff Arnold is a U.S. citizen and a resident of Hawaii County. Complaint ¶ 30.  Plaintiff Arnold legally owns firearms. Complaint ¶ 32. Plaintiff Arnold is not disqualified under Hawaii or federal law from owning or possessing a firearm. Complaint ¶ 36.  Plaintiff Arnold applied for a permit to acquire by submitting all necessary paperwork to County on or about July 23, 2025, and in a separate PTA, on September 25, 2025. Complaint ¶ 33. Plaintiff Arnold's July 23, 2025, permit to acquire application was not approved until September 9, 2025, and his September 25, 2025, PTA was not processed until November 5, 2025. Complaint ¶ 34. In both cases he waited more than forty (40) days for the PTA.  Plaintiff Arnold wishes to purchase additional firearms in the immediate future. Complaint ¶ 38.

Plaintiff Garland is a U.S. citizen and a resident of Hawaii County. Complaint ¶ 40.  Plaintiff Garland legally owns firearms. Complaint ¶ 42. Plaintiff Garland is not disqualified under Hawaii or federal law from owning or possessing a firearm. Complaint ¶ 46.  Plaintiff Garland has fulfilled all requirements to own a firearm in the County of Hawaii. Complaint ¶ 47.  Plaintiff Garland applied for a

2

permit to acquire by submitting all necessary paperwork to County on or about
November 18, 2025. Complaint ¶ 43. Plaintiff Garland's permit to acquire
application was not approved until January 6, 2026. Complaint ¶ 44. Plaintiff
Garland wishes to purchase additional firearms in the immediate future.
Complaint ¶ 45.

Plaintiff Grell is a U.S. citizen and a resident of Hawaii County. Complaint ¶
50.  Plaintiff Grell legally owns firearms. Complaint ¶ 52. Plaintiff Grell is not
disqualified under Hawaii or federal law from owning or possessing a firearm.
Complaint ¶ 56.  Plaintiff Grell has fulfilled all requirements to own a firearm in
the County of Hawaii. Complaint ¶ 45.  Plaintiff Grell applied for a permit to
acquire by submitting all necessary paperwork to County on or about July 9, 2025.
Complaint ¶ 53. Plaintiff Grell's permit to acquire application was not approved
until September 3, 2025. Complaint ¶ 54. Plaintiff Grell wishes to purchase
additional firearms in the immediate future.  Complaint ¶ 55.

Plaintiff White is a U.S. citizen and a resident of Hawaii County. Complaint
¶ 60.  Plaintiff White is not disqualified under Hawaii or federal law from owning
or possessing a firearm. Complaint ¶ 65.  Plaintiff White has fulfilled all
requirements to own a firearm in the County of Hawaii. Complaint ¶ 66.  Plaintiff
White applied for a permit to acquire by submitting all necessary paperwork to
County on August 29, 2025. Complaint ¶ 62. Plaintiff White's permit to acquire

application has still not been approved nor denied as of February 9, 2026. He has

waited more than one-hundred-sixty-five (165) days so far as of February 6, 2026.

Complaint ¶ 63.  In addition to the delays Plaintiffs have faced, Plaintiffs can point

to at least two more incidents where the County has taken more than forty days to

process a permit to acquire a firearm.  Complaint ¶¶ 28, 29. Plaintiffs have a good

faith belief that these incidents are indicative of a wide spread custom, policy and

practice where the County takes greater than the forty days allotted under state law

to process permits to acquire.

### III.    <u>Standard for Preliminary Injunction</u>

"The appropriate legal standard to analyze a preliminary injunction motion

requires a district court to determine whether a movant has established that (1) he is

likely to succeed on the merits of his claim, (2) he is likely to suffer irreparable harm

absent the preliminary injunction, (3) the balance of equities tips in his favor, and

(4) a preliminary injunction is in the public interest." *Baird v. Bonta*, 81 F.4th 1036,

1040 (9th Cir. 2023). "It is well-established that the first factor is especially

important when a plaintiff alleges a constitutional violation and injury. If a plaintiff

in such a case shows he is likely to prevail on the merits, that showing usually

demonstrates he is suffering irreparable harm no matter how brief the violation." *Id.*

"It is "always in the public interest to prevent the violation of a party's constitutional

rights."" *Id* (quoting *Riley's Am. Heritage Farms v. Elsasser,* 32 F.4th 707, 731 (9th

4

Cir. 2022)). "An "individual's right to carry a handgun for self-defense outside the home" under the Second Amendment is one such constitutional right." *Id* (quoting *N.Y. State Rifle & Pistol Ass'n v. Bruen,* 142 S. Ct. 2111, 2122 (2022)). Alternatively, an "injunction is appropriate when a plaintiff demonstrates that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (internal citation omitted).

## IV.   The County is Liable Pursuant to *Monell*

The County is liable for violating Plaintiffs' Second Amendment rights. "Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 690 (1978) (footnotes omitted). Here, the County has a custom of waiting more than forty days to process some permit to acquire applications[4].   It is true that to prove a custom or practice "a plaintiff must show a "longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity."

---

[4] The Complaint's Statement of Facts references seven instances.

Here, Plaintiffs can demonstrate the County of Hawaii has a custom of taking in excess of forty days to process a permit to acquire because they can point to sevan separate incidents where the County of Hawaii has taken greater than forty days to process a permit to acquire. That is sufficient to establish a custom or practice of doing so. *See Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992) (internal quotations omitted).  "[A] custom or practice can be supported by evidence of repeated constitutional violations which went uninvestigated and for which the errant municipal officers went unpunished." *Hunter v. County of Sacramento*, 652 F.3d 1225, 1236 (9th Cir. 2011); *see also Nehad v. Browder*, 929 F.3d 1125, 1141-42 (9th Cir. 2019) (citing evidence sufficient to create triable issue regarding informal practice or policy). This is especially true at the pleading stage because "[n]ormally, the question of whether a policy or custom exists would be a jury question." *Trevino v. Gates*, 99 F.3d 911, 920 (9th Cir. 1996).

Based on the incidents alleged in the complaint, Plaintiffs have alleged sufficient facts to allege a custom and practice of violating their Second Amendment rights sufficient to confer *Monell* liability onto the County.

## V. Plaintiff Has a Strong Likelihood of Success on the Merits

To determine whether a state's restriction is constitutional, the Court in *N.Y. State Rifle & Pistol Ass'n v. Bruen,* 597 U.S. 1, 142 S. Ct. 2111 (2022) explained that "the standard for applying the Second Amendment is as follows: When the Second

Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." 142 S. Ct. at 2129–30. It is the State's burden to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id*. at 2127; *see also id*. at 2150 ("[W]e are not obliged to sift the historical materials for evidence to sustain New York's statute. That is respondents' burden."). If the State fails to meet its burden, then the State's restrictions must be enjoined.

### VI.   Plaintiffs' Conduct is Covered by the Second Amendment's Plain Text

If the plaintiff's proposed course of conduct falls within the Second Amendment's plain text, then "the Constitution presumptively protects that conduct." *Bruen*, 142 S. Ct. at 2126. The Supreme Court has defined all of the Second Amendment's key terms. "The people" means "all Americans"; "Arms" includes "all instruments that constitute bearable arms"; and, most relevant here, to bear simply means to "carry." *District of Columbia v. Heller*, 554 U.S. 570, 580–82, 584 (2008).

Here, Plaintiffs are part of the people.  This cannot seriously be disputed.  All Plaintiffs are qualified to own guns in Hawaii. Complaint ¶¶ 36, 46, 56, and 65.

Therefore, they have all passed Hawaii's onerous criminal and mental health background checks for firearm ownership. "*Heller* explained that the words "the people" in the Second Amendment have been interpreted throughout the Constitution to "unambiguously refer[] to all members of the political community, not an unspecified subset." 554 U.S. at 580. Further, "the people" "refer[] to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community." *Id.* (citing *United States v. Verdugo-Urquidez*, 494 U.S. 259, 265, 110 S. Ct. 1056, 108 L. Ed. 2d 222 (1990)). For those reasons, the *Heller* Court began its analysis with the "strong presumption that the Second Amendment right is exercised individually and belongs to all Americans," *id.* at 581, and then confirmed that presumption." *United States v. Rahimi*, 61 F.4th 443, 451 (5th Cir. 2023). Furthermore, Plaintiffs' proposed course of conduct is protected by the Second Amendment. That is because they wish to keep arms for lawful self-defense just like the plaintiff in *Heller.*

The Supreme Court's binding determination of the text of the Second Amendment definitively resolves the question of whether Plaintiffs' proposed conduct is presumptively protected by the Second Amendment. Plaintiffs are Americans who seeks to keep bearable arms for self-defense. "Common sense dictates that the right to bear arms requires a right to acquire arms, just as the right

8

to free press necessarily includes the right to acquire a printing press, or the right to freely practice religion necessarily rests on a right to acquire a sacred text. *Ortega v. Grisham*, 148 F.4th 1134, 1143 (10th Cir. 2025)

Accordingly, under *Bruen*'s unambiguous directions, "the burden falls on [the County] to show that [the County's waiting time] is consistent with this Nation's historical tradition of firearm regulation." *Id.* at 2135; County "must identify a historical analogue that curtails the right to peaceably carry handguns openly for self-defense to a comparable degree, with a comparable severity, and with a comparable blanket enforcement." *Baird v. Bonta*, 81 F.4th 1036, 1047 (9th Cir. 2023).

The historical analogues the State points to must be "representative." Historical "outlier" requirements of a few jurisdictions or of territorial governments are to be disregarded. *Bruen*, 142 S. Ct. at 2133, 2153, 2147 n.22 & 2156. This means regulations from only a handful of states or those that cover only a small portion of the population are not enough to demonstrate that modern regulations are consistent with the Second Amendment. *Id.* at 2155 (rejecting regulations applying to only 1% of the American population); *see also Koons v. Platkin,* No. 22-7464, 2023 WL 3478604, (D.N.J. May 16, 2023) (finding regulations covering 10% and 15% of American population insufficient). *Bruen* also categorically rejected reliance on laws enacted in the Territories, including expressly "Arizona, Idaho, New Mexico,

9

Oklahoma," holding that such laws "are most unlikely to reflect 'the origins and continuing significance of the Second Amendment' and we do not consider them 'instructive.'" *Bruen*, 142 S. Ct. at 2154 (quoting *Heller*, 554 U.S. at 614).

The historical analogues must be "relevantly similar," which is to say that they must burden ordinary, law-abiding citizens' right to carry for self-defense in a similar manner and for similar reasons. *Bruen*, 142 S. Ct. at 2132. *Bruen* held that the inquiry into whether an analogue is proper is controlled by two "metrics" of "how and why" any restriction was historically imposed during the Founding era. *Id.* at 2133. "[W]hether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are '*central*' considerations when engaging in an analogical inquiry." *Id.* (emphasis in original). In attempting the "affirmatively prove" that its restrictions on public carry are consistent with the Nation's historical tradition, the County may refer to historical analogues at the Founding and claim those meet *Bruen*'s "how" and "why" standard. 142 S. Ct. at 2127, 2133. Here, there is no historical tradition of any delay and certainly not in excess of 40 days to exercise the constitutional right to own, acquire or possess firearms. Therefore, the County's policy of doing so here violates the Second Amendment.  Indeed, in *Bruen,* the Supreme Court expressly found that lengthy wait times could be subject to a Second Amendment challenge.

> [B]ecause any permitting scheme can be put toward abusive ends, we
> do not rule out constitutional challenges to shall-issue regimes where,

10

for example, ***lengthy wait times in processing license applications*** or exorbitant fees deny ordinary citizens their right to public carry.

*N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2138 n.9 (2022) (emphasis added)

The Tenth Circuit recently struck down New Mexico's seven day waiting period to own a firearm. In doing so the Court found "[n]othing in the record suggests that the historically understood right to keep and bear arms tolerated universal and indiscriminate burdens on purchasing or acquiring firearms with no way to enjoy the full right." *Ortega v. Grisham*, 148 F.4th 1134, 1155 (10th Cir. 2025). "The Waiting Period Act, however, applies a blanket burden across all of society, assuming that everyone is dangerous or unstable before they can exercise their Second Amendment right." *Ortega v. Grisham*, 148 F.4th 1134, 1152 (10th Cir. 2025). "We similarly reject New Mexico's attempt to declare the entire population of New Mexico presumptively dangerous to themselves or others only because they want to acquire firearms." *Ortega v. Grisham*, 148 F.4th 1134, 1151 (10th Cir. 2025).  Similarly in preliminarily enjoining Maine's three-day waiting period the Court there found "[t]he waiting period is not narrow since it applies to very near everyone seeking to purchase a firearm and their entire right to keep and bear any firearm at all through purchase is temporarily banned." *Beckwith v. Frey*, 766 F. Supp. 3d 123, 134 (D. Me. 2025).

In numerous contexts, the Constitution forecloses conditioning the exercise

11

of rights on lengthy waiting periods. *See, e.g.*, *Rogers v. Hacker*, 2023 WL 5529812, at *8 (S.D. Ill. Aug. 28, 2023) (finding a waiting period of *five months* to issue a firearm owners ID card constituted a concrete injury); *Memorial Hospital v. Maricopa County*, 415 U.S. 250, 263-64 (1974) (an Arizona statute imposing a *one-year waiting period* for new residents to become eligible for state medical assistance impermissibly interfered with the constitutional right to freedom of interstate immigration). In *Cooper v. Aaron,* 358 U.S. 1 (1958), the Supreme Court was confronted with similar bureaucratic foot dragging in implementing public school integration. Given the open defiance of the Supreme Court's opinion in *Brown I*[5] and *Brown II*,[6] the Court did not tolerate finger-pointing, simply observing that "delay in any guise in order to deny . . . constitutional rights . . . could not be countenanced, and that only a prompt start, diligently and earnestly pursued . . . could constitute good faith compliance." 358 U.S. at 7.

This Court need not determine the floor for what is a "lengthy wait time" under *Bruen*, it is enough for this Court to find the delays Plaintiffs have suffered are excessive. The County should issue permits within the time prescribed by state law. The County's waiting time also violates the Second Amendment because the County has excessive discretion. *Bruen* commands that government may not have

---

[5] *Brown v. Board of Education*, 347 U.S. 483 (1954).
[6] *Brown v. Board of Education,* 349 U.S. 294 (1955).

12

discretion in making determinations on Second Amendment rights.  *See Bruen*, 142

S. Ct. at 2138 n.9. (Prohibiting governments from engaging in the "appraisal of

facts, the exercise of judgment, and the formation of an opinion".) Here, how long

a permit to acquire applicant must wait is left to the unfettered discretion of County

officials. This unfettered discretion violates the Second Amendment.  This is

especially true because the County's policy is ultra vires. The County's waiting

time is ultra vires because it is unreasonable and state law requires that waiting

times be reasonable. Ultra vires conduct is inherently arbitrary. *Cine SK8, Inc. v.

Town of Henrietta* 507 F.3d 778, 790 (2d Cir. 2007). This argument is further

developed in the substantive due process section of this brief.[7] Arbitrary

government action is caused by unfettered discretion and thus violative of the

Second Amendment. Plaintiffs are likely to succeed on their Second Amendment

claim.

## VII.  <u>County's Excessive Delay Violate Procedural Due Process</u>

An excessive delay is a violation of procedural due process. *See Cleveland

Bd. of Educ. v. Loudermill,* 470 U.S. 532, 547 (1985) ("At some point, a delay in

the post-termination hearing would become a constitutional violation.") The

Second Circuit's jurisprudence is illustrative of this point. In *Kuck v. Danaher*, the

---

[7] Plaintiffs expressly incorporate and reference their arguments from their
substantive due process section.

litigant sued over excessive wait times like the ones at issue here. "His principal claim is a procedural due process challenge alleging that DPS — in tandem with the Board of Firearms Permit Examiners ("the Board") — has a practice of improperly denying permits, unnecessarily prolonging the appeals that follow, and then quietly resolving disputes at the last minute." *Kuck v. Danaher*, 600 F.3d 159, 161 (2d Cir. 2010). As a result, the Second Circuit found "Kuck has stated a procedural due process claim". *Id.*

To demonstrate a claim for procedural due process a litigant must fulfill the test laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). This test requires that we balance: "(1) the private interest at stake; (2) the risk of an erroneous deprivation of that interest through the procedures used and the probable value (if any) of alternative procedures; (3) the government's interest, including the possible burdens of alternative procedures." *Id.* Here, *Bruen* expressly holds that Plaintiffs have a constitutional right to carry a firearm for lawful self-defense. Thus, Plaintiffs have a protected liberty interest at stake in this litigation. As to the second prong, Plaintiffs suffer an ongoing threat of erroneous deprivation because the County will not process their applications.  Even if their applications are eventually processed, there will be a considerable amount of time where Plaintiffs were unable to carry or own or possess solely due to the County's policy. Furthermore, there is already an alternative procedure for County to use.

14

That being, County could simply use the process laid out in state law. As the *Kuck* Court found, the second prong is fulfilled because "[b]ecause this practice appears to have affected a significant number of applicants, and the delay is considerable, the second Mathews factor weighs in favor of Kuck at this stage of the proceedings." *Kuck v. Danaher*, 600 F.3d 159, 166 (2d Cir. 2010).

As to the third prong, County has no interest in placing an delay on Plaintiffs' applications which violates state law. As Judge Watson found in granting a preliminary injunction in another firearms case where County was found to be violating state law, "it is in the public interest to have the language of Hawai'i law enforced". *Santucci v. City & Cty. of Honolulu*, 2022 U.S. Dist. LEXIS 213030, (D. Haw. Nov. 23, 2022). Here, County has no interest in delaying PTA applications. For the purposes of a due process analysis, the government must articulate some reason, tied to this interest, that justifies the lengthy period necessary to resolve these appeals. *See FDIC v. Mallen*, 486 U.S. 230, 242 (1988) (directing courts to examine "the justification offered by the Government for delay and its relation to the underlying governmental interest"). "[W]e cannot accept, at least without additional factual support, the months-long delay that Connecticut attempts to justify in this case." *Kuck v. Danaher,* 600 F.3d 159, 167 (2d Cir. 2010).  Plaintiffs have a strong likelihood of success in their procedural

due process claim. They also have a substantive due process claim because the County's conduct is ultra vires.

## VIII. County's Policy Violates Substantive Due Process Because it is Ultra Vires

"[T]he Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Foucha v. Louisiana,* 504 U.S. 71, 78 (1992). Ultra vires conduct is inherently arbitrary. *Cine SK8, Inc. v. Town of Henrietta* 507 F.3d 778, 790 (2d Cir. 2007). County's implementation of Hawaii law is ultra vires because state law requires permit to acquire applications to be processed within a forty days and County's delays are in excess of that. *See* H.R.S. §134-2(j). Thus, County's conduct violates substantive due process.

Under the law governing substantive due process, Plaintiffs must prove that they have a valid interest at stake. *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998). Substantive due process "forbids the government to infringe certain 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 301–02 (1993). Therefore, if there is a fundamental right at stake, a challenged government policy must survive strict scrutiny. If not, a

litigant must prove their interest was infringed in an arbitrary or irrational manner. *See "H" Samson v. City of Bainbridge Island*, 683 F.3d 1051, 1058 (9th Cir. 2012).

Plaintiffs have a protected liberty interest at stake in their ability to own, acquire and possess firearms. And pursuant to *McDonald* and *Bruen*, that interest deals with a fundamental right.[8] Therefore, strict scrutiny applies. To survive strict scrutiny, a government policy must be narrowly tailored to serve a compelling state interest. *Reno v. Flores*, 507 U.S. 292, 301–02 (1993). However, even if rational basis review applies, County's policy is unconstitutional. Under a rational basis review a government policy must have a rational relationship to some legitimate end. *See, e. g., Heller v. Doe,* 509 U. S. 312, 319-320 (1993). Here, County's policy is inherently arbitrary and tainted with fundamental irregularities due to the fact it does not comply with state law. As the Second Circuit holds, this violates substantive due process even under rational basis review.

In *Cine SK8, Inc. v. Town of Henrietta* 507 F.3d 778 (2d Cir. 2007) the Second Circuit found ultra vires conduct violates due process. "[I]f the Town Board did not have authority for the actions it took regarding Fun Quest's permit— as it appears it did not—the Board's actions were ultra vires and, as a result,

---

[8] "[I]t is clear that the Framers and ratifiers of the Fourteenth Amendment counted the right to keep and bear arms among those fundamental rights necessary to our system of ordered liberty." *McDonald v. City of Chicago*, 561 U.S. 742, 778 (2010).

sufficiently arbitrary to amount to a substantive due process violation." *Id.* at 790.
In this case, a due process violation exists because County claims authority to
regulate PTA applications pursuant to state law. County's failure to process permits
within a reasonable amount of time is an ultra vires act which is inherently
arbitrary. This violates substantive due process.

County is violating Plaintiffs' Due Process rights through its ultra vires
conduct. County is required under state law to process permits in forty days or less.
*See* H.R.S. § 134-2(e). County has failed to do this. Therefore, County's "actions
were ultra vires and, as a result, sufficiently arbitrary to amount to a substantive
due process violation." *Id* at 790. In *Cine SK8,* the litigants were able to invoke
Due Process because they were able to establish a protected property interest.
Here, Plaintiffs may invoke Due Process because they have a protected liberty
interest in their right to carry a firearm for purposes of lawful self-defense. As in
*Cine SK,* County's ultra vires conduct is inherently arbitrary. There is no
compelling government interest in County delaying PTA applications for as along
as it has. And even if County could produce a government interest, their policy of
delaying processing PTA's applications is not narrowly tailored. Thus, County's
policy fails strict scrutiny.  Even if rational basis review were to apply, County's
ultra vires conduct is so arbitrary that it is unconstitutional pursuant to *Cine Sk*.

18

County's conduct violates substantive due process. For the reasons laid out above, Plaintiffs are likely to succeed on the merits of their claims.

## IX.    Plaintiffs Will Suffer Irreparable Harm

Here, Plaintiffs suffer irreparable harm every moment their PTA applications go unprocessed. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); 11A Charles Alan Wright et al., Federal Practice and Procedure § 2948.1 (2d ed. 1995) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."). The Ninth Circuit has imported the First Amendment "irreparable-if-only-for-a-minute" rule to other rights and, in doing so, has held deprivation of those rights is irreparable harm per se. *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997). "This analysis does not change where the constitutional violation at issue is a Second Amendment violation because the right to peaceably bear arms to defend oneself is not "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees."" *Baird v. Bonta*, 81 F.4th 1036, 1046 (9th Cir. 2023). (quoting *McDonald v. City of Chi.*, 561 U.S. 742, 780 (2010). *See also Ezell v. City of Chi.,* 651 F.3d 684. 700 (7th Cir. 2011) (a deprivation of the right to arms is "irreparable and having no adequate remedy at law."). This Court has found Second

19

Amendment violations constitute irreparable harm. *Fisher v. Kealoha,* 2012 U.S.

Dist. LEXIS 90734, *40, 2012 WL.

## X. <u>Granting the PI is in the Public Interest and Serves Equity</u>

The last two preliminary injunction elements merge when the government is the

defendant. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)

(citation omitted). When challenging government action that affects the exercise of

constitutional rights, "[t]he public interest . . . tip[s] sharply in favor of enjoining the"

law. *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009). As the Ninth

Circuit has made clear, "all citizens have a stake in upholding the Constitution" and

have "concerns [that] are implicated when a constitutional right has been violated."

*Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005). The State "cannot suffer harm

from an injunction that merely ends an unlawful practice or reads a statute as required

to avoid constitutional concerns." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir.

2013); *See Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is

clear that it would not be equitable . . . to allow the state . . . to violate the requirements

of federal law." (citations omitted). "[W]e *presume* that a constitutional violation

causes a preliminary injunction movant irreparable harm and that preventing a

constitutional violation is in the public interest." *Baird v. Bonta*, 81 F.4th 1036, 1046

(9th Cir. 2023). On the other hand, granting an injunction will end the ongoing violation

of Plaintiffs' rights. It is in the public interest for this Court to compel County to process

Plaintiffs' applications.

## XI.    Waiver of Bond is Proper and Appropriate Under These Circumstances

"Notwithstanding its seemingly mandatory language," stating that the movant must provide "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained," "Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Weaver v. City of Montebello*, 370 F.Supp.3d 1130, 1139 (C.D. Cal. 2109) (quoting *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009)). The court may properly dispense with any such bond requirement when "the balance of ... equities weighs overwhelmingly in favor of the party seeking the injunction," *East Bay Sanctuary Covenant v. Trump*, 349 F.Supp.3d 838, 869 (N.D. Cal. 2018) (quoting *Elliott v. Kiesewetter*, 98 F.3d 47, 60 (3d Cir. 1996)), when "there is no realistic likelihood of harm to the defendant from enjoining his or her conduct," *Johnson* at 1086 (internal quotations omitted), and where the plaintiffs have a "likelihood of success on the merits," *People of the State of Cal. ex rel. Van De Kamp v. Tahoe Regency Planning Agency*, 766 F.2d 1319, 1326 (9th Cir. 1985). All these factors are true here, as illustrated above, thus rendering a waiver both proper and appropriate.

## XII.    This Court Should Consolidate Pursuant to Rule 65(a)(2)

Rule 65(a)(2) of the Federal Rules of Civil Procedure state "[b]efore or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing. This Court should do so here because "[g]iven the expedited and predominately legal nature of the questions presented by this litigation," the "evidence presented by the parties through the briefing and hearing on the motions for preliminary injunctions will be relevant to adjudicating the Plaintiffs' claims on the merits*." Donald J. Trump for President, Inc. v. Bullock*, No. CV 20-66-H-DLC, 2020 U.S. Dist. LEXIS 169794, at *2 (D. Mont. Sep. 16, 2020). Plaintiffs are currently suffering irreparable harm and would thus benefit from a consolidated hearing.

## XIII. <u>Conclusion</u>

A preliminary injunction should be issued which compels County to process all permit to acquire applications in forty days or less.

DATED:  Honolulu, Hawaii, <u>February 10, 2026</u>.

Respectfully submitted,

<u>/s/ *Kevin O'Grady*</u>

Kevin Gerard O'Grady

Law Office of Kevin O'Grady

1164 Bishop Street, Suite 1605

Honlululu, Hawaii 96813

(808) 521-3367

Hawaii Bar No. 8817

<u>Kevin@KevinOGradyLaw.Com</u>

<u>/s/ *Alan Alexander Beck*</u>

Alan Alexander Beck

Law Office of Alan Beck

2692 Harcourt Drive

San Diego, CA 92123

(619) 905-9105

Hawaii Bar No. 9145

<u>Alan.alexander.beck@gmail.com</u>

23